S10A1522. JOHNSON v. THE STATE.
(709 SE2d 217)

HUNSTEIN, Chief Justice.

Appellant Chavarious Johnson appeals his conviction of felony murder and related crimes in connection with the shooting death of Elvis Daniels. Finding no error, we affirm.[1]

Viewed in the light most favorable to the verdict, the evidence adduced at trial established as follows. On the night of March 30, 2008, Kendrick Norwood ran into Daniels, with whom he was acquainted, at the South Fulton County apartment complex where Daniels lived with his girlfriend. Daniels, a small-time drug dealer, told Norwood he was "fixing to serve my trap," i.e., sell marijuana to his customers, and headed to his apartment. Norwood was then approached in the parking lot by a small gold car occupied by three men, one of whom asked Norwood about purchasing marijuana. Norwood went to Daniels' apartment and offered to broker the deal; Daniels and Norwood then went out to the parking lot with a quarter pound of marijuana and walked up to the men in the car. The man in the front passenger seat got out of the car, and there was a brief exchange about which of the men had money and whether the purchase would be made. As Daniels and Norwood turned away as if to reject the deal, the man from the front passenger seat grabbed

---

[1] Appellant was indicted in Fulton County on July 22, 2008 for malice murder; two counts of felony murder, predicated, respectively, on armed robbery and aggravated assault; two counts of armed robbery; two counts of aggravated assault; theft by receiving; possession of a firearm during commission of a felony; and possession of a firearm by a convicted felon. At the conclusion of a jury trial held December 3-9, 2008, appellant was found guilty of the felony murder and armed robbery counts, one count of aggravated assault, and possession of a firearm during commission of a felony. Appellant was acquitted of the malice murder and one aggravated assault count; the remaining charges were dead-docketed. On December 15, 2008, appellant was sentenced to life imprisonment for murder, plus ten years consecutive for armed robbery and five years consecutive for firearm possession; the remaining convictions merged for sentencing purposes. Following a hearing, appellant's timely motion for new trial, as amended, was denied on March 30, 2010. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the September 2010 term and submitted for decision on the briefs.

Daniels by the neck, pulled a gun, and demanded money, and the backseat passenger moved to get out of the car. Norwood dropped over $100 in cash from his pockets and ran, as gunshots were fired. Norwood escaped unharmed, but Daniels sustained three gunshot wounds, including a fatal wound to the back. Neither Norwood nor Daniels was armed at the time.

Evidence recovered from the scene together with the autopsy results indicated that there had been two weapons involved in the shooting, a nine millimeter semi-automatic pistol and a .38 caliber handgun.

Calvin Anderson witnessed the shooting. He testified that he saw a gold car with three men in it about to pull out of the apartment complex parking lot when Norwood beckoned them to come back. Anderson saw a man emerge from the front passenger side of the car, demand that Daniels and Norwood "get these folks their money," pull out a gun, grab Daniels by the neck, and begin shooting when Daniels tried to break free. Anderson saw Norwood run away, at which point Anderson, too, ran away.

Surah Weaver testified that she had spent approximately an hour and a half talking with Daniels in the parking lot of the apartment complex prior to his murder. During the conversation, Weaver observed a small car occupied by three black men drive by slowly several times and noted that Daniels appeared unnerved by them.

During the police investigation, both Norwood and Anderson identified appellant from a photographic lineup as the shooter from the front passenger side of the perpetrators' car. In addition, both Norwood and Anderson also identified, from a second photo lineup, an associate of appellant, Marquavious Bonner, as having been one of the other men in the car.

There was also evidence implicating appellant in a shooting that occurred in DeKalb County approximately ten days after the Daniels shooting. The victim in that shooting, Henry Bigby, testified that he was walking in the parking lot at an apartment complex when a gold car pulled up and a man got out, pulled a gun, and started shooting at Bigby and his truck. Forty-caliber bullets were recovered from Bigby's truck after the shooting. Bigby identified appellant from a lineup as the perpetrator and also identified appellant at trial.

In the course of arresting appellant, officers seized a .40 caliber pistol from the apartment where he was living at the time, which was itself admitted as evidence at trial.

1. Though appellant has not enumerated the general grounds, we find that the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307

(99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred by allowing the State to present evidence regarding the Bigby shooting, asserting that this incident was insufficiently similar to the Daniels shooting to warrant admission as a similar transaction.

> Before evidence of independent acts may be admitted into evidence, the State must show that it seeks to introduce the evidence for an appropriate purpose; that there is sufficient evidence to establish that the accused committed the independent act; and that there is a sufficient connection or similarity between the independent act and the crime charged so that proof of the former tends to prove the latter.

(Citation omitted.) *Abdullah v. State*, 284 Ga. 399, 401 (3) (667 SE2d 584) (2008). In assessing the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate act and the crimes in question. *Hall v. State*, 287 Ga. 755 (2) (699 SE2d 321) (2010). A trial court's decision to allow similar transaction evidence will not be disturbed absent an abuse of discretion. *Moore v. State*, 288 Ga. 187 (3) (702 SE2d 176) (2010).

Here, the trial court admitted the evidence regarding the Bigby shooting for the limited, proper purpose of establishing appellant's bent of mind and course of conduct, see, e.g., *Barnes v. State*, 287 Ga. 423 (3) (696 SE2d 629) (2010); *Smith v. State*, 273 Ga. 356 (2) (541 SE2d 362) (2001), and instructed the jury on several occasions to consider it for this purpose alone. With regard to the similarities between the incidents, the evidence reflected that both crimes involved nighttime shootings occurring less than two weeks apart wherein a man emerged from a gold car in the parking lot of an apartment complex and opened fire with little apparent provocation. In light of these similarities, we find no error in the trial court's admission of the similar transaction evidence. See *Moore*, supra, 288 Ga. at 191 (3); *Abdullah*, supra, 284 Ga. at 401 (3); *Smith*, supra, 273 Ga. at 357 (2).

Appellant also contends that his trial counsel rendered ineffective assistance by failing to highlight the inconsistencies between Bigby's trial testimony and his account of the shooting as reported to police immediately after he was shot. As reflected by the police report documenting the Bigby shooting, which was admitted at the motion for new trial hearing but was offered neither at the Rule 31.3 (B)

hearing[2] nor during trial, Bigby's initial account differed from that to which he testified at trial in several material respects, including his description of the perpetrator's physical appearance and the manner in which the shooter emerged and began shooting. Appellant argues that, had trial counsel offered the police report to rebut the State's proffer at the Rule 31.3 (B) hearing, the trial court may have opted to exclude the similar transaction evidence altogether, or, had counsel impeached Bigby's account at trial, the jury may have questioned the credibility of Bigby's identification and therefore discounted the similar transaction evidence.

In order to establish ineffective assistance of counsel, appellant bears the burden of showing that counsel's performance was professionally deficient and that there is a reasonable probability that, but for counsel's deficiencies, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 695 (104 SC 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355 (3) (689 SE2d 280) (2010). Appellant has failed to carry his burden in this instance. While the Court agrees that the inconsistencies between Bigby's testimony and his initial account were material, appellant has failed to rebut "the strong presumption that counsel's representation fell within the wide range of reasonable professional conduct." *Mitchell v. State*, 282 Ga. 416, 419 (6) (651 SE2d 49) (2007). Though trial counsel testified at the motion for new trial hearing that he recalled that the account as reflected on the police report was inconsistent with Bigby's trial testimony, appellate counsel never inquired as to why trial counsel chose not to use the police report to impeach the State's pretrial proffer or Bigby's trial testimony. In the absence of any evidence on this issue, we are constrained to presume that trial counsel made a reasonable strategic decision not to pursue this mode of impeachment. See id. at 420-421 (6) (d) (where appellants failed to question trial counsel regarding reasons for not requesting particular jury charges, court must presume counsel acted reasonably in this regard); *Holmes v. State*, 273 Ga. 644 (5) (c) (543 SE2d 688) (2001) (where appellate counsel failed to question trial counsel regarding reasons for failing to raise particular objection at trial, counsel's effectiveness in this regard must be presumed). This enumeration, therefore, is without merit.

3. Appellant next contends that the trial court erred by admitting into evidence the .40 caliber gun seized upon appellant's arrest. We find no error in this regard, however, as the gun was offered as

---

[2] Uniform Superior Court Rule 31.3 (B) requires the trial court to hold a pretrial hearing to determine the admissibility of any similar transaction evidence the State intends to offer at trial.

evidence of appellant's commission of the Bigby shooting. Given the State's obligation to establish appellant's involvement therein in order to support its effort to present the similar transaction evidence, see Division 2, supra, and given the similarity between the gun found and the gun used in the Bigby shooting, there was no error in the admission of the gun. See *Dukes v. State*, 273 Ga. 890 (4) (548 SE2d 328) (2001) (trial court properly admitted evidence regarding gun found at time of defendant's arrest, even though gun was not weapon used in charged crimes, where gun was found with other physical evidence related to charged crimes); *Martin v. State*, 198 Ga. App. 488 (402 SE2d 95) (1991) (trial court properly admitted evidence of burglary defendant's possession, at time of his arrest, of items stolen in separate burglary used as similar transaction).

4. In his final enumeration, appellant asserts error, on both Confrontation Clause and hearsay grounds, with respect to several references in testimony by the lead investigator in the case, Brett Zimbrick, to a tip he had received from an unnamed source implicating appellant in the shooting. The Confrontation Clause generally prohibits the admission of an out-of-court testimonial statement made by a declarant who is not available for cross-examination by the accused. *Crawford v. Washington*, 541 U. S. 36, 40 (124 SC 1354, 158 LE2d 177) (2004); *Gay v. State*, 279 Ga. 180 (2) (611 SE2d 31) (2005). In a similar vein, the hearsay rule generally prevents witnesses from testifying as to statements made by third parties. OCGA § 24-3-1 (prohibiting hearsay except in cases of necessity and defining hearsay as "that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons," id. at (a)).

The record reflects that most of the instances in which Zimbrick made mention of the tip did not involve recitation of any "statement" made by the tipster but rather merely referred to unspecified "information" that Zimbrick had come to possess with regard to the case or simply acknowledged that an unnamed source existed.[3] In these instances, Zimbrick was not testifying as to any "statements" made by the tipster, and thus such testimony violated neither the hearsay rule nor the Confrontation Clause. See *Henley v. State*, 285 Ga. 500, 507 (5) (678 SE2d 884) (2009) (investigator's testimony

---

[3] Specifically, the testimony at issue consists of statements by Zimbrick to the effect (1) that he had received "information which resulted in photo lineups being prepared"; and (2) that he had shown a photographic lineup to "the source of the information of [appellant's] name." The latter category of these references, in addition to not relating an actual statement, was in fact elicited by appellant's counsel's own cross-examination of Zimbrick and thus may not be asserted as error by appellant. See *Torres v. State*, 272 Ga. 389 (7) (529 SE2d 883) (2000) (party may not complain of error he induced).

regarding his conduct based on information obtained from others was not hearsay, as it "did not relay information told to him by other persons"); *Jennings v. State*, 285 Ga. App. 774 (1) (648 SE2d 105) (2007) (no Confrontation Clause problem because no witness "actually repeated any alleged hearsay regarding [appellant] as the perpetrator"). See also Paul S. Milich, Georgia Rules of Evidence § 17:3, p. 540 (2010-2011 ed.) (positing that it would violate hearsay rule to allow police officer "to testify that [an] anonymous caller identified the defendant by name or description" but would be "far less problematic if the officer simply testifies that the police had received an anonymous call [regarding] suspicious activity").

There were two instances in which Zimbrick did testify, albeit obliquely, as to the substance of the tipster's actual statement: first, in response to the prosecutor's question as to why Zimbrick became involved in the investigation of the Bigby shooting, Zimbrick replied that he had received "information from the same source indicating that [appellant] was responsible for [the Bigby shooting]"; second, in response to questioning as to why the arrest warrant for Marquavious Bonner had been rescinded, Zimbrick testified that he had received "information from another source [indicating] possible involvement by another individual other than Mr. Bonner." However, any error in the admission of this testimony was harmless, as the first of these statements was merely cumulative of the much more detailed testimony of Bigby himself affirmatively identifying appellant as his shooter, and the second of these statements related not to the evidence against appellant but rather to the strength of the case against Bonner. See *White v. State*, 273 Ga. 787 (4) (546 SE2d 514) (2001) (erroneous admission of hearsay deemed harmless where testimony cumulative of other admissible evidence); *Jones v. State*, 265 Ga. 84, 86 (4) (453 SE2d 716) (1995) (assuming arguendo that statement was inadmissible on hearsay and confrontation grounds, error was harmless because statement was cumulative of other admissible evidence and thus " 'did not contribute to the conviction' ").[4] Accordingly, this enumeration lacks merit.

*Judgment affirmed. All the Justices concur.*

---

[4] In a footnote, appellant also asserts that trial counsel was ineffective in "fail[ing] to object to each instance" in which reference to the tip was made. The record reflects that counsel did object to at least one of Zimbrick's references to the tip and to two questions bearing the potential to elicit responses regarding the substance of the tip. Moreover, given our finding that none of Zimbrick's references to the tip constituted reversible error, any failure of counsel to object in certain of these instances could not give rise to an ineffectiveness claim. See *Durrence v. State*, 287 Ga. 213, 218 (2) (a) (695 SE2d 227) (2010) ("[c]ounsel's failure to make a meritless objection does not constitute deficient performance").

DECIDED MARCH 18, 2011 —
RECONSIDERATION DENIED APRIL 12, 2011.

*Jimmonique R. S. Rodgers*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.