In the Supreme Court of Georgia

Decided: October 19, 2015

S15A0985. REDDING v. THE STATE.

HUNSTEIN, Justice.

Appellant George Redding was convicted of murder and related offenses in connection with the deaths of victims Ronnie Pierce and Victor Hill, who were shot and killed on June 19, 2007 and July 1, 2007, respectively. Redding appeals, asserting error in the admission of certain evidence and ineffective assistance of counsel. Finding no error, we affirm.[1]

---

[1]Redding was indicted by a Fulton County grand jury in February 2008 on 13 counts. As to each homicide victim, Redding was charged with one count of malice murder, two counts of felony murder, one count of aggravated assault, and one count each of firearm possession during commission of a felony and firearm possession by a convicted felon. Redding was also charged with the aggravated assault of a third victim, LaShanta Teague, arising from the July 1, 2007 incident involving victim Hill. At the conclusion of a jury trial held January 25-31, 2011, Redding was convicted on all counts. The trial court thereafter sentenced Redding to two consecutive terms of life imprisonment for each murder, plus a total of forty consecutive years for the aggravated assault of Teague and the firearm possession counts; the remaining counts merged or were vacated by operation of law. Redding filed a timely motion for new trial on February 18, 2011, which was amended, through new counsel on March 28, 2013 and again on November 1, 2013. After a hearing held November 8, 2013, the trial court denied the motion for new trial on January 3, 2014. Redding filed his notice of appeal on January 27, 2014. The appeal was docketed to the April 2015

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. In the early morning hours of June 19, 2007, Ronnie Pierce was shot dead in the Mechanicsville area of Atlanta. Witness Lanera Cleveland testified that on the evening of the crime, she was with Pierce at an intersection in Mechanicsville known for attracting drug users, when they were approached by Redding, who accused Pierce of stealing a pistol. The two exchanged words, and Redding produced a gun and began chasing Pierce, shooting. Pierce ran onto the front porch of a nearby house and knocked on the door calling for help, but Redding caught up, shot Pierce, and then ran away. Two other witnesses identified Redding as Pierce's shooter in pre-trial interviews with police, but both recanted at trial, whereupon the State was permitted to show the jury the video-recorded interviews of both witnesses implicating Redding and corroborating certain details of Cleveland's account. Pierce died of his injuries, which the medical examiner opined were consistent with being shot from behind while running and being shot in the head at close range.

term of this Court and was thereafter submitted for decision on the briefs.

2

With regard to the Victor Hill shooting, witness Lashuntae Teague testified that, on the evening of July 1, 2007, she purchased marijuana from Hill in an apartment complex parking lot off Boulevard Place in Northeast Atlanta. Soon after Hill walked away from her car, gunfire erupted in the parking lot from multiple shooters. Hill was fatally shot, and Teague was injured by stray bullets. Witness Princeton Henry, a friend of Hill, testified that he was in the parking lot with Hill on that evening and saw Redding shoot Hill with an assault rifle.

The State also adduced similar transaction evidence from witness Christopher Thornton, who testified that, in September 2007, he witnessed Redding shoot victim Jura Tye in the street from close range with an assault rifle. Evidence gathered in the investigation of that crime confirmed the use of an assault rifle – as well as a handgun – and was consistent with a conclusion that the assault rifle had been fired at close range. Thornton also testified that, after the shooting, Redding told him he was just back from California, where he had fled because he was "wanted for a murder on the Boulevard." In addition, Thornton testified that he had been threatened and attacked at the Fulton County jail, where he was being housed while waiting to testify at the Redding trial, and

that he believed those threats and attacks were linked to his expected testimony.

A ballistics examiner testified that grey-colored bullet casings found at the scenes of the Hill and Tye shootings were from 7.62 x .39 caliber bullets that were manufactured in Russia. Bullet casings of the same type were found in a search of the Clayton County home where Redding was arrested.

1. Though Redding has not enumerated the general grounds, we have concluded that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Redding was guilty of all the crimes of which he was convicted. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Redding contends that the trial court erred in admitting evidence regarding the Jura Tye shooting on the ground that it lacked sufficient similarity or connection to the Pierce and Hill shootings to be admissible as a similar transaction. Evidence of independent acts is admissible only if the State establishes

that it seeks to introduce the evidence for an appropriate purpose;

that there is sufficient evidence to establish that the accused committed the independent act; and that there is a sufficient connection or similarity between the independent act and the crime charged so that proof of the former tends to prove the latter.

(Citations omitted.) Wilson v. State, 293 Ga. 508, 510 (3) (748 SE2d 385) (2013). "In assessing the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate act and the crimes in question." Johnson v. State, 289 Ga. 22, 24 (1) (709 SE2d 217) (2011). Accord Abdullah v. State, 284 Ga. 399 (3) (667 SE2d 584) (2008). A trial court's decision to admit similar transaction evidence will not be disturbed absent an abuse of discretion. Moore v. State, 288 Ga. 187 (3) (702 SE2d 176) (2010).

Here, the trial court conducted a pre-trial hearing regarding the admissibility of the proposed evidence and, at trial, heard testimony from Thornton outside the jury's presence prior to admitting the evidence in question. The court found that the State sought to offer the evidence regarding the Jura Tye shooting for the appropriate purpose of establishing Redding's modus operandi and course of conduct.[2] The court further found that there was

---

[2]Redding was tried in 2011, prior to the January 1, 2013 effective date of Georgia's new Evidence Code. See Ga. L. 2011, p. 99, § 101 (new Evidence Code

sufficient evidence – namely, the testimony of Christopher Thornton – identifying Redding as one of the participants in the Tye shooting. Redding does not challenge these determinations, and we find no abuse of discretion therein.

Redding contends, however, that the trial court erred in finding sufficient similarities between the Tye shooting and the Pierce and Hill shootings to justify the admission of evidence regarding the Tye shooting. The Tye shooting was similar to the Pierce shooting in that, as the evidence reflects, both involved the assailant pursuing his victim, gunning him down, and then sealing his fate with close-range shots to the head. The Tye shooting was similar to the Hill shooting in that both involved the use of high-powered assault rifles loaded with the same type of foreign-made 7.62 x .39 caliber bullets. All three shootings occurred in high-crime areas of Atlanta, within approximately three months of each other. Given our obligation when assessing similar transactions to focus on the

---

effective for proceedings conducted after January 1, 2013). Under the law then in effect, "course of conduct" was considered a proper purpose for admitting similar transaction evidence. See Matthews v. State, 294 Ga. 50, 52, n.2 (751 SE2d 78) (2013). Under the new Evidence Code, similar transaction evidence may be admissible for purposes including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OCGA § 24-4-404 (b).

similarities rather than the differences between incidents, see Johnson, 289 Ga. at 24; Abdullah, 284 Ga. at 401, we conclude that the trial court properly exercised its discretion in admitting evidence of the Tye shooting. See, e.g., Moore, 288 Ga. at 190-191 (no error in admitting evidence of prior shooting at defendant's murder trial, where both incidents involved unprovoked gun violence); Abdullah, 284 Ga. at 401 (same, where both shootings occurred in close physical and temporal proximity and involved unsuspecting victims shot without provocation); Salahuddin v. State, 277 Ga. 561 (5) (592 SE2d 410) (2004) (same, where both incidents involved aggressive conduct that rapidly escalated and the defendant's use of a handgun to resolve differences with others). This enumeration is thus without merit.

3. Redding next contends that the trial court erred in permitting, over objection, the State to play for the jury a portion of a videotaped interview of witness Stanley Collins, in which he referred to Redding as the leader of a local gang. Prior to trial, the defense moved to prohibit the admission of any evidence regarding Redding's alleged gang affiliation, and the trial court ruled that such evidence would be barred except in the event of a witness' recantation. At trial, witness Collins, who had given a pre-trial statement to police

7

identifying Redding as the perpetrator of the Pierce murder, first denied making any such statement, then claimed that his statement had been coached by investigators. To impeach Collins, the State was permitted to show Collins' video-recorded interview, in which, when asked how he knew Redding, Collins replied that Redding was "a neighborhood guy who . . . . run[s] the gang called 30 Deep." Redding now asserts, as he argued at trial, that allowing this portion of the interview to be shown to the jury was error, as it served only to assail his character.

We disagree. The trial court properly admitted Collins' pre-trial statement, as a whole, to impeach his trial testimony. See Gibbons v. State, 248 Ga. 858 (286 SE2d 717) (1982) (witness' out-of-court statement implicating defendant admissible to impeach that witness' trial testimony in which he denied making such statement and then claimed statement was extracted through bribery). While ordering the redaction of certain portions of the statement that described the gang in detail, the court allowed in the above-quoted portion identifying Redding as a gang leader, reasoning that the fact that Collins gave "very specific information" in response to the interviewer's open-ended question tended to show that Collins was not being coached through the

8

interview. The trial court did not abuse its discretion in concluding that this portion of the statement was relevant for impeachment purposes, and this is true even though the evidence of Redding's alleged gang affiliation may have incidentally put his character in issue. See Wolfe v. State, 273 Ga. 670, 674 (4) (a) (544 SE2d 148) (2001) (evidence of defendant's gang affiliation admissible, despite its negative reflection on defendant's character, where it was "relevant and material to an issue in the case"). This enumeration, thus, is without merit.

4. Redding next contends that the trial court erred in refusing to strike a portion of testimony given by Thornton on cross-examination. In an attempt to impeach Thornton, defense counsel inquired about Thornton's own criminal history and about a plea deal Thornton had made on armed robbery charges, in which he had agreed to testify in the Redding case regarding the Jura Tye shooting. Defense counsel then asked Thornton why he did not come forward with information about the Tye shooting until some two years after the fact:

> Q: So why didn't you get on the phone and be truthful with somebody in the two years after it happened? Why didn't you do that?
> A: I was scared, sir.
> Q. All right. And it couldn't help you, right? So when it could help you, you're not scared; is that what you're saying?
> A: No, sir.

9

Q: You're scared? You robbed drug dealers and kidnapped people and now you're afraid; is that what you're telling this jury?
A: Yeah, I'm afraid of the connections that your client has –
Q: Okay. Right.
A: – because he's a leader of –
The Court: Mr. Francis, let him finish.
A: He's the leader of a 30 Deep gang –

Defense counsel moved to strike this testimony, and the trial court declined to do so, finding that counsel's open-ended question had opened the door to this testimony. The trial court instructed Thornton to finish his response, and he did so: "[b]ecause your client is a leader of the 30 Deep gang and they pretty much control the whole jail as you can see." Defense counsel then moved for a mistrial, which the trial court denied. We find no abuse of discretion in this regard, as Thornton's remarks were a direct and pertinent response to defense counsel's aggressive questioning regarding Thornton's motives for testifying. See Mosely v. State, 269 Ga. 17, 20 (4) (495 SE2d 9) (1998) (defense counsel "will not be heard to object" to testimony that he himself elicited). Accord Simmons v. State, 271 Ga. 563 (4) (a), (b) (522 SE2d 451) (1999).

5. In his final enumeration, Redding contends that his counsel rendered ineffective assistance in several respects. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was

10

professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Id. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. Id. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

(a) Redding first claims that counsel performed unreasonably by failing to object to evidence regarding a jailhouse assault on witness Thornton on the eve of his testimony. Thornton, who appeared in court with his face badly

11

bruised, testified that he had been attacked on the previous evening at the Fulton County jail by two other inmates and that, during the attack, the inmates made remarks that made Thornton feel threatened by Redding. Thornton also testified that earlier during the week of trial, while being transported from the courthouse to the jail, he had crossed paths with Redding, who tried to ask him about "this situation." Two days after that, Thornton was approached while in the holding cell at the courthouse by an unidentified man, whose remarks, Thornton testified, made him feel threatened by Redding.

> It is well established that
>
> an attempt by a third person to influence a witness not to testify or to testify falsely is relevant and may be introduced into evidence in a criminal prosecution on the issue of the defendant's guilt where it is established that the attempt was made with the authorization of the accused.

(Punctuation and citations omitted.) Kell v. State, 280 Ga. 669, 671 (2) (a) (631 SE2d 679) (2006). Though Redding asserts that there was no evidence that he orchestrated or even authorized the jailhouse attack, this claim is belied by Thornton's testimony that his assailants made statements which made him feel threatened by Redding, as well as by Thornton's testimony about the remarks

12

of the unidentified man who approached him in the courthouse holding cell.[3]

There was thus ample evidence to support a "reasonable and plain inference"

that Redding was responsible for these acts of intimidation, and evidence

regarding such acts was, therefore, properly admitted. See Lindsey v. State,

295 Ga. 343, 348 (3) (760 SE2d 170) (2014) (no error in permitting witness to

testify regarding threatening phone calls despite fact that there was no direct

evidence linking defendant with calls). Because this evidence was admissible,

counsel's failure to object thereto does not constitute deficient performance.

See Wesley, 286 Ga. at 356 (failure to make meritless objection cannot

constitute deficient performance).

(b) Redding next contends that counsel performed deficiently by eliciting,

in his cross-examination of Thornton, Thornton's testimony that Redding was

"a leader of the 30 Deep gang" and that the gang "pretty much control[s] the

whole jail." At the new trial hearing, Redding's lead trial counsel testified in

---

[3]Contrary to Redding's contention, Thornton's testimony that these remarks made him feel threatened by Redding does not constitute mere speculation on his part that Redding was behind these acts of intimidation; the vagueness in Thornton's testimony in this respect was the result of hearsay objections by Redding's counsel as to Thornton's testifying to the content of statements made by his attackers or the unidentified man.

this regard that, in questioning Thornton, he was attempting to cast doubt on Thornton's testimony regarding the Tye shooting by suggesting it was simply a fabrication designed to secure a plea deal on Thornton's own criminal charges. As part of this strategy, counsel probed into why Thornton had not come forward at the time of the Tye shooting, to which Thornton replied he was scared; which led to the colloquy, quoted in Division 4, supra, that ended with the statement regarding Redding's gang affiliation. In his testimony at the new trial hearing, trial counsel stated that he had been "trying to walk the line" of impeaching Thornton in this way, without evoking a response that referenced Redding's gang involvement. He further acknowledged that "clearly looking back at it, it didn't work." However, as we have noted, in considering ineffectiveness claims, we do not assess counsel's performance through the lens of hindsight:

> [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

14

Arnold v. State, 292 Ga. 268, 270 (2) (a) (737 SE2d 98) (2013) (quoting Strickland, 466 U.S. at 689-690). Trial counsel was clearly attempting to navigate a narrow course, of effectively attacking Thornton's credibility without allowing the exchange to veer into the subject of Redding's gang involvement. In addition, at this point in the trial, the jury had already heard witness Collins' recorded statement referencing Redding's ties to the 30 Deep gang, so the stakes in opening the door to further gang-related testimony were lower than if no prior reference to gang affiliation had been made. Overall, therefore, counsel's strategy of attacking Thornton's credibility, even if not flawlessly executed, was still not "so patently unreasonable that no competent attorney would have followed such a course." Romer, 293 Ga. at 344.

(c) Redding also asserts that counsel rendered ineffective assistance in failing to challenge what he claims was a mis-characterization by the State of the 7.62 x .39 caliber bullet casings found at the scenes of the Hill and Tye shootings and at the home where Redding was apprehended. In his direct examination of the State's ballistics expert, the prosecutor asked the expert whether bullets made with these grey-colored steel casings were rare, and the expert responded, "[y]es, if it's – it would be foreign made usually." Shortly

15

thereafter, after showing the expert a grey steel-jacketed 7.62 x .39 caliber bullet recovered from the Hill crime scene, he asked whether the bullet "is another one of the rare types you just mentioned." The expert replied, "[y]es, it wouldn't be domestic." In his closing, the prosecutor highlighted the significance of finding the same "rare stainless steel casings" at different crime scenes and the site of Redding's arrest. Redding claims that trial counsel performed deficiently by failing to cross-examine the expert to clarify that these casings were not "rare" in the sense of being uncommon but rather only in the sense of being distinctly foreign-made, and that this enabled the State to argue that these casings were essentially a signature of Redding.

Pretermitting whether trial counsel's failure to cross-examine the State's ballistics expert on this issue constituted deficient performance,[4] we find no prejudice under the Strickland standard, which requires a determination that counsel's alleged errors "undermine [our] confidence in the outcome" of the trial. Strickland, 466 U.S. at 694. Even if the alleged mis-characterization of the bullet casings bolstered the inference that the same perpetrator was involved

[4]When questioned at the new trial hearing about his failure to cross-examine the ballistics expert, trial counsel could offer no explanation as to why he had not done so and conceded in hindsight that he should have.

16

in both the Hill and Tye shootings and the inference that Redding was that individual, the fact remains that the same type of bullet casing was found at both scenes and at the site of Redding's arrest. Given this evidence, the fact that Redding was identified by eyewitnesses at each scene as the assailant, and the evidence of witness intimidation, were we to find deficient performance by counsel in this regard, it would not undermine our confidence in the outcome of Redding's trial. Accordingly, this claim must fail.

Judgment affirmed. All the Justices concur.