312 Ga. 811
FINAL COPY

S21A0767.  STAFFORD v. THE STATE.

LaGrua, Justice.

Appellant Lil'Che Stafford was found guilty by a Fulton County jury of felony murder and first-degree burglary in connection with the death of Jose Greer.[1]  On appeal, Appellant raises four enumerations of error: (1) evidence of an earlier burglary and armed robbery was improperly admitted; (2) a testifying detective inappropriately opined that Appellant was involved in an additional prior robbery; (3) trial counsel was ineffective for failing to request

---

[1] The crimes occurred on December 8, 2015.  On March 20, 2018, a Fulton County grand jury indicted Appellant, Fredrick Clark, Vas Coleman, Maxx Pritchett, and Mark Spencer for felony murder and burglary in the first degree. Prior to trial, Appellant's and Spencer's trial was severed from their co-defendants' trial.  At a joint trial with Spencer from September 24 to October 2, 2018, a jury found Appellant guilty of all counts.  The trial court then sentenced Appellant to serve life in prison for felony murder.  The trial court merged the burglary count with the felony murder count.  Appellant timely filed a motion for new trial on October 24, 2018, which he amended four times. Following hearings, the trial court denied Appellant's amended motion for new trial on December 3, 2020.  Appellant filed a timely notice of appeal on December 8, 2020, and his case was docketed to this Court's April 2021 term. Appellant's case was orally argued on June 9, 2021.

a jury instruction on intervening or unforeseen cause of death; and (4) the detective's testimony regarding the custodial statements of a co-conspirator was improperly admitted because it was inadmissible hearsay and trial counsel was ineffective for failing to object to its admission based on the Confrontation Clause. We conclude that there was no reversible error, so we affirm.

1. The evidence concerning the crimes came largely from co-defendant Fredrick Clark, who was offered use immunity for his testimony. Clark testified as follows: On December 8, 2015, Appellant met with Clark and co-defendants Mark Spencer, Maxx Pritchett, and Vas Coleman at a house on Mitchell Street in Atlanta. After discussing that they needed money, the group decided to rob the home of a drug dealer they knew as "Cash." Clark drove the men to Sky Lofts Condominiums, where they thought Cash lived. Upon their arrival, Spencer checked the front entryway of the condominium complex for cameras and returned to Clark's car. Appellant, Clark, and Spencer then entered the condominium complex while Coleman and Pritchett remained in the car.

2

Clark rang the doorbell of a third-floor unit where they believed Cash was residing, while Appellant and Spencer hid out of view. When nobody answered, Clark began using a screwdriver to open the door, and Appellant and Spencer joined him in attempting to break down the door. After seeing someone down the hall, Clark and Appellant began to flee, but Spencer stopped Clark and convinced him to continue trying to get into the unit. Appellant returned to the door to see why Clark and Spencer stopped following him, then stayed. The three men took turns trying to open the door with the screwdriver, and eventually Appellant and Spencer broke the door open together with their forearms. Once inside the unit, the three men stole an iPhone, iPad, laptop computer, and some hats — all of which were placed in a backpack that Spencer was carrying. Appellant also took a jar full of coins. While in the unit, Spencer remarked to Clark that he noticed an ambulance and police in the vicinity, which prompted the three men to leave through a back stairway of the condominium complex. When they got outside, they passed "a guy on the ground." Clark testified that Spencer

asked the man if he needed help, but when he received no response, they continued to flee by jumping over a gate. Clark also testified "the coins dropped" as the three jumped over the complex gate to escape.

Unbeknownst to the men, Cash did not live in this unit, but the victim, Greer, did. When Greer heard the commotion at his door, he called 911 to report that his unit was being broken into; he also told 911 that he had fled to his balcony to escape the perpetrators and that he might try to jump off the balcony to get to safety. Ultimately, Greer fell 30 feet to the ground.

A surveillance video recording from the condominium complex showed three men entering the complex through a doorway. Another camera recorded the same three men running down a stairwell and exiting through a different doorway.

William Gadsden, a resident at the condominium complex, saw three men running down the back stairwell of the complex. Gadsden noticed that the men were in their late teens or early twenties, wearing dark clothes, and one was carrying a backpack. After

exiting the door of the building, the men climbed over the fence surrounding the complex and fled toward a nearby CVS Pharmacy.

The police arrived at the scene about two minutes after Greer called 911 and moments after Gadsden saw the three men running down the stairwell. The responding officer found Greer lying on the sidewalk, and Greer was able to tell her that he was trying to escape the burglars by climbing to the balcony below, but he slipped and fell. The police found an abandoned jar of coins containing Greer's business card on the sidewalk nearby and found Greer's unit ransacked. Greer was transported to the hospital, where he later died. The medical examiner testified that Greer died from blunt force trauma and classified the manner of death as a homicide.

Clark testified that after jumping over the fence, he and Spencer went in one direction and Appellant went in an opposite direction. Spencer and Clark shed their outer clothing, placed the clothes in the backpack, and disposed of the backpack in an alleyway. They then walked to a nearby Krispy Kreme, where they called an Uber to take them back to the Mitchell Street house. Video

5

surveillance recordings from the Krispy Kreme, recorded about six minutes after Greer's 911 call was placed, showed two men in the store wearing pants that matched those worn by two of the men in the condominium complex surveillance video. According to Clark, after returning to the Mitchell Street house in the Uber, Spencer called Korey Bryant to get a ride back to the alleyway to retrieve the backpack.

Bryant, who was friends with Appellant and his co-defendants, testified that Spencer called him to give Spencer a ride. He picked up Clark and Spencer from the Mitchell Street house on the day of Greer's homicide. As they were leaving the house, they saw Appellant walking toward them. Appellant got into Bryant's car, and Bryant took all three men back toward the area of the crime scene. Spencer directed Bryant to park by a building about a block away from the Sky Lofts Condominiums. Appellant, Clark, and Spencer left the car for a few minutes and returned with a backpack. Bryant then took them back to the Mitchell Street house.

Cell site tower location information for Clark, Coleman,

Pritchett, and Spencer placed their cell phones in the area of the Mitchell Street house before the burglary, in the area of the Sky Lofts Condominiums around the time of the burglary, and back in the area of the Mitchell Street house after the burglary. As Appellant did not have a cell phone, there were no cell phone records available for him.

Javon Farquharson, who regularly bought and resold electronics, testified that on the day after the burglary, Appellant and Coleman tried to sell him an iPad and iPhone. They also showed Farquharson a wallet containing an ID card and a red debit or credit card. Farquharson heard Appellant mention that the group "hit a little lick last night" and "I stepped over this dude when I was leaving." Farquharson opted not to purchase the electronics from Appellant and Coleman because he was a convicted felon, and he did not "want to get caught up with no dealing in stolen property." Appellant later mentioned that he used the stolen card at a

7

McDonald's restaurant.[2]  Later that night, Farquharson saw a news

report of Greer's death and recognized Greer's name from the ID and

credit card.

Alani Bellinger, Farquharson's girlfriend, was present when

Appellant and Coleman brought the wallet and electronics to

Farquharson.  Bellinger testified that she could see the face on the

ID card in the wallet, and she saw the same face in a news report

about Greer's death later that night.  She subsequently called a

police tip line to report this information.

In addition to the information from the tip line, the police

determined from an interview with Farquharson that Appellant and

Coleman later sold the stolen electronics at a particular computer

store, and Greer's laptop and iPhone were later recovered from that

store.[3]  Based on this information, arrest warrants were issued for

---

[2] Bank statements reflect Greer's stolen card was used at a McDonald's restaurant on the day after the burglary, and a video surveillance recording from the McDonald's shows an individual resembling Appellant in the restaurant at the time the card was used.

[3] Clark testified that he drove Appellant, Spencer, and Coleman to the computer store, where they received about $60 for the items, and Appellant and Spencer divided the proceeds between themselves.

Appellant and Spencer. After a review of Appellant's social media accounts, the police determined that Appellant was flying from Denver to Atlanta. Appellant was arrested at the Denver airport on January 13, 2016. Spencer turned himself in at a police station in Washington, D.C.

At some point during the investigation, Clark sought to provide the police with information about the crimes. Clark admitted that he purchased a plane ticket for Appellant to Denver and a bus and plane ticket for Spencer. Based on other information he provided, an arrest warrant was also issued for Coleman. Coleman was arrested in Alabama in February 2016 and was transported to Atlanta, where he was interviewed by the police.

2. Appellant contends that the trial court abused its discretion when it admitted evidence of prior crimes under OCGA § 24-4-404 (b) ("Rule 404 (b)"). We conclude that any such abuse of discretion was harmless error.

Rule 404 (b) provides, in relevant part:

> Evidence of other crimes, wrongs, or acts shall not

be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Prior to trial, the State filed a timely notice of intent to introduce, under Rule 404 (b), other-acts evidence of a burglary and armed robbery in which Appellant allegedly participated in October 2015 (hereinafter referred to as "the October 2015 incident"). Following a hearing, the trial court ruled, over Appellant's objection, that evidence of the October 2015 incident was admissible under Rule 404 (b) to show intent, plan, and identity.

(a) *The Evidence Admitted Under Rule 404 (b).*

During trial, the State presented evidence of the October 2015 incident through the testimony of Clark; two Georgia State University students, James Shimkus and Preston Baldwin; and Detective Vincent Velasquez. The trial court instructed the jury that the evidence about the October 2015 incident was being offered for the limited purposes of proving intent, plan, and identity. The

10

court also instructed the jury that it was not authorized to "infer from such evidence that [Appellant is] of a character that would commit such crimes."[4]

The evidence presented by the State under Rule 404 (b) included the following. Shimkus, who is white, testified that in the "middle of October in 2015," he was a student at Georgia State and was rooming with Baldwin, who is black and played football at Georgia State, at the City Walk Apartments. Shimkus also testified that he was dealing drugs during this time. According to Shimkus, in October 2015, Shimkus heard a knock at the door, looked through the peephole, and saw a man standing outside his apartment. Shimkus opened the door and six men, including the man outside the door, rushed into the apartment holding guns and wearing masks. Shimkus and Baldwin testified that the men robbed them

---

[4] The trial court gave this limiting instruction three times: once before Clark's testimony; a second time before Shimkus's testimony, stating that the instruction applied to both Shimkus and Baldwin; and a third time in the final jury charge.

of money, drugs,[5] and video game consoles, struck them, and left the apartment. Shimkus and Baldwin could not identify any of the men who robbed them and did not report the incident to police.

Clark testified that in the fall of 2015, he visited the Mitchell Street house, where Appellant, Spencer, Pritchett, and Coleman were hanging out. Inside the room where they were gathered, Clark saw mushrooms, marijuana, LSD, and money. The group, including Appellant, stated that they had stolen the drugs and money from two Georgia State students. Clark was told that the students lived at the City Walk Apartments, which was housing for students of Georgia State University; one of the students was black, and one was white; the black student was a Georgia State football player that Clark identified as "Princeton";[6] and the white student was a drug dealer. The group also told Clark that they "beat one of the guys up" before leaving with the drugs and money.

---

[5] Shimkus testified that the burglars took marijuana, mushrooms, and ecstasy.

[6] During trial, Detective Velasquez testified that "Princeton" was a nickname for Preston Baldwin.

12

The State also presented the testimony of Detective Velasquez, who testified about statements Clark made to him in January 2016 when Clark met with him to provide more information about Greer's death. Detective Velasquez testified that during this interview, Clark told him that Appellant and his co-defendants committed an armed robbery in the fall of 2015 of a "white guy named . . . James" who "had a black roommate" that Clark believed was named "Princeton." Detective Velasquez then sought out Shimkus and Baldwin, who spoke to him about the details of the October 2015 incident, which closely mirrored the testimony they gave at trial.[7]

(b)  *Harmless Error Analysis.*

Assuming, without deciding, that the trial court abused its discretion in admitting the evidence of the October 2015 incident, we conclude that any such error was harmless and thus does not merit reversal.

For  a  nonconstitutional  ruling . . . ,  the  test  for

---

[7] Appellant also argues that this evidence from Clark and Detective Velasquez was inadmissible hearsay. Because we assume that the evidence was inadmissible under Rule 404 (b), we need not decide whether it was also inadmissible hearsay.

determining harmless error is whether it is highly probable that the error did not contribute to the verdict. In conducting that analysis, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done.

*Allen v. State*, 310 Ga. 411, 415 (2) (851 SE2d 541) (2020).

The evidence tying Appellant to the October 2015 incident was not especially prejudicial. Shimkus and Baldwin could not identify their assailants. The only evidence actually connecting Appellant to the October 2015 incident was Clark's testimony, which was merely a retelling of what he heard from the group at the Mitchell Street house, and Detective Velasquez's testimony, which was a retelling of Clark's story. If the jury found Clark credible, he gave a detailed account of Appellant's involvement in the charged crimes, so his second-hand account of the October 2015 incident would be unlikely to affect the jury's guilty verdicts. And if the jury discredited Clark, it would have discredited his claim that Appellant was involved in the October 2015 incident. Further, the State did not mention the October 2015 incident in either its opening statement or closing argument. See *Taylor v. State*, 306 Ga. 277, 283 (2) (830 SE2d 90)

14

(2019) (any error in admission of other-acts evidence was harmless in part because there was no contention that the State mentioned or relied upon the evidence in closing argument).

And, the other evidence against Appellant was strong. Clark testified that he, Appellant, and others planned the charged burglary; that he, Appellant, and Spencer physically broke down the door to enter Greer's unit and stole an iPhone, laptop, and other items while inside, which they put inside a backpack that Spencer was wearing; and that they passed Greer lying on the ground as they fled. Bryant testified that he drove Appellant, along with Clark and Spencer, to retrieve the backpack. Farquharson and Bellinger saw Appellant the next day with Greer's driver's license and his debit or credit card. Appellant told Farquharson that his group "hit a little lick last night," and "I stepped over this dude when I was leaving." Appellant also attempted to sell Farquharson an iPad and iPhone. Appellant later told Farquharson that the electronics were sold at a particular computer store, and Greer's electronics were later recovered from the same computer store. Appellant also admitted

to Farquharson that he used Greer's card at a McDonald's restaurant; Greer's bank statement confirms the card was used at a McDonald's restaurant that day, and surveillance video from that McDonald's restaurant at that time shows a man resembling Appellant.

Given the limited prejudicial effect of the admission of the October 2015 incident and the strength of the other evidence of Appellant's guilt, we conclude that it is highly probable that any error in admitting evidence of the October 2015 incident did not contribute to the verdicts. See *Allen*, 310 Ga. at 415 (2) (error in admitting a prior robbery was harmless due to strong evidence against the defendant). Accordingly, this enumeration fails.

3. In a related enumeration, Appellant contends that his trial counsel rendered ineffective assistance by failing to object to part of Detective Velasquez's testimony regarding an armed robbery "separate from the violent crimes that the trial court already admitted into evidence pursuant to [Rule 404 (b)]." Alternatively, Appellant contends that the trial court erred in admitting Detective

Velasquez's testimony regarding this separate incident.

After a review of the relevant testimony, we conclude this enumeration of error is based on an inaccurate reading of the transcript. The relevant trial testimony was as follows: When Clark met with Detective Velasquez, Clark said that Pritchett, Coleman, Spencer, Appellant, and one other friend committed a robbery at City Walk Apartments of a white male named James and his black roommate named "Princeton," both of whom were students at Georgia State University.

Detective Velasquez entered this information into the police data system to find matching incidents, and found a robbery that occurred on April 28, 2015, at the City Walk Apartments involving a victim by the name of James Shimkus ("the April 2015 incident"). The police report from the April 2015 incident led Detective Velasquez to find and interview Shimkus, who said that he had been robbed another time in a separate incident in the fall of 2015. [8]

---

[8] As discussed above in Division 2 (a), Shimkus testified at trial that he was robbed in the "middle of October in 2015." Thus, the record indicates that this separate robbery was the October 2015 incident.

17

Shimkus's description of the October 2015 incident matched the details of the robbery that Clark described to Detective Velasquez. Detective Velasquez testified that, during his interview with Shimkus, Shimkus admitted he was a drug dealer and explained that he was living with a roommate named Preston Baldwin at City Walk Apartments. Shimkus said that he and Baldwin were robbed by six black males, who entered their apartment armed with guns and forced them to the ground. The robbers forced Shimkus to open a safe and stole drugs and money. Neither victim reported this October 2015 incident to the police. The prosecutor then asked Detective Velasquez about what he was able to conclude based on this information, to which Detective Velasquez responded, "I was reasonably sure that this crew was involved in that particular robbery as well." Appellant raised no objection to this testimony at trial. However, he now contends that either trial counsel was ineffective for failing to object or the trial court abused its discretion when it admitted Detective Velasquez's comment that he was "reasonably sure" that Appellant was involved in the April

18

2015 incident because that testimony amounted to inadmissible character evidence about an additional prior crime. Both of these claims fail.

(a) To prevail on a claim of constitutionally ineffective assistance of counsel, Appellant must show that his trial counsel's performance was deficient, and that such deficient performance prejudiced the defense so seriously as to deprive him of a fair trial. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

> To satisfy the deficiency prong, a defendant must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. This requires a defendant to overcome the strong presumption that trial counsel's performance was adequate. To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Mitchell v. State*, 307 Ga. 855, 858 (2) (838 SE2d 847) (2020) (citation and punctuation omitted). "If the defendant fails to satisfy either

19

the 'deficient performance' or the 'prejudice' prong . . . , this Court is not required to examine the other." *Hendrix v. State*, 298 Ga. 60, 61-62 (2) (779 SE2d 322) (2015).

Based on the above testimony, it is clear that Detective Velasquez's "reasonably sure" comment referred to the October 2015 incident involving Shimkus and Baldwin, and *not* the April 2015 incident. Further, Detective Velasquez's reference to the April 2015 incident was merely to explain how he located Shimkus; he never testified and no other evidence was presented that Appellant had any involvement in that incident. Any objection by trial counsel to Detective Velasquez's comment on the ground that it improperly implicated Appellant in the April 2015 incident would have been meritless because the testimony did not support such an objection. We therefore conclude that trial counsel did not perform deficiently by failing to object to this testimony on this basis. See *Lynn v. State*, 310 Ga. 608, 617 (4) (c) (ii) (B) (852 SE2d 843) (2020) ("The failure to make a meritless objection is not deficient performance.") (citation and punctuation omitted).

(b)     Appellant's argument that the trial court erred by admitting the testimony fails for the same reason.  Appellant did not object to this testimony at trial, so we review its admission for plain error only.  See *Harris v. State*, 307 Ga. 657, 663-664 (2) (a) (837 SE2d 777) (2020) ("[B]ecause Harris did not make a specific objection at trial to the admission of [the] statements on the grounds now asserted in his appeal, we review these claims only for plain error.").  To show plain error, Appellant

> must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.  The third component of this test requires [Appellant] to make an affirmative showing that the error probably did affect the outcome below.

*Lupoe v. State*, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016) (citation and punctuation omitted).

For the reasons outlined above in Division 3 (a) explaining why Appellant has not shown deficiency in his claim of ineffective assistance, Appellant has shown no error, much less plain error, in

21

the admission of this testimony by the trial court. Accordingly, this enumeration fails.

4. Appellant contends that trial counsel rendered constitutionally ineffective assistance of counsel by failing to request a jury instruction on intervening or unforeseen cause of death. We disagree.

"As is the case generally, to authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge." *McClure v. State*, 306 Ga. 856, 863 (1) (834 SE2d 96) (2019) (citation and punctuation omitted). "Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law." *Garner v. State*, 303 Ga. 788, 790 (2) (815 SE2d 36) (2018) (citation and punctuation omitted). In determining whether a trial court erred in giving jury instructions, we read and consider the instructions as a whole. See *Daniels v. State*, 302 Ga. 90, 105 (7) (805 SE2d 80) (2017).

Here, we conclude that the trial court gave sufficient instructions to the jury regarding proximate cause, and an

additional instruction was unnecessary. In the final jury charge, the trial court gave the pattern charge on causation for felony murder, which states:

> In order for a homicide to have been done in the commission of this particular felony, there must be some connection between the felony and a homicide. The homicide must have been done in carrying out the unlawful act and not collateral to it. It is not enough that the homicide occurred soon or presently after the felony was attempted or committed. There must be such a legal relationship between the homicide and the felony so as to cause you to find that the homicide occurred before the felony was at end or before any attempt to avoid conviction or arrest for the felony. . . . The felony must have a legal relationship to the homicide, be at least concurrent with it in part, and be a part of it in an actual and material sense. A homicide is committed in the carrying out of a felony when it is committed by the accused while engaged in the performance of any act required for the full execution of the felony.

The jury was thus properly and adequately instructed on proximate cause, and that jury charge was supported by the evidence. An additional jury charge on unforeseen or intervening cause was unnecessary because, considered as a whole, the charge given by the trial court was a correct statement of the law with regard to proximate cause in a felony murder case. See *Treadaway*

23

*v. State*, 308 Ga. 882, 890 (3) (a) (843 SE2d 784) (2020) ("Considering the charges as a whole, we conclude that the trial court's charge was an accurate statement of the law and was sufficient to instruct the jury on the principles of proximate causation relevant to this case."). Thus, an additional instruction on this issue was not required and could have properly been rejected by the trial court if counsel had requested one. Therefore, trial counsel did not perform deficiently by failing to request such an instruction, and Appellant also has not shown prejudice from the lack of such a request. See *Pennie v. State*, 292 Ga. 249, 252 (2) (736 SE2d 433) (2013) ("In light of the evidence and the charges that the trial court gave, trial counsel's decision not to request a separate charge on proximate causation was not patently unreasonable and did not constitute deficient performance."); *Calhoun v. State*, 308 Ga. 146, 151 (2) (a) n.3 (839 SE2d 612) (2020) (where jury was adequately instructed on causation with respect to felony murder, the appellant failed to demonstrate prejudice from trial counsel's failure to request specific jury instructions on proximate and intervening cause). This

enumeration fails.

5. Appellant contends that the trial court abused its discretion when it allowed Detective Velasquez to testify about statements Coleman made to him during Coleman's custodial interview, arguing that Detective Velasquez's testimony repeating Coleman's statements was inadmissible hearsay. Further, Appellant contends that this testimony was a violation of the Confrontation Clause and that trial counsel rendered constitutionally ineffective assistance by failing to object on this ground. Both claims fail.

During Coleman's interview, which was relayed at trial through Detective Velasquez's testimony, Coleman said that he was with Clark, Pritchett, Spencer, and Appellant on the day of the crimes. The men were at the Mitchell Street house when they agreed to drive to the Sky Lofts Condominiums. Coleman stated that he and Pritchett remained in the car while the others entered the condominium complex and that Pritchett drove him to a Wendy's restaurant before returning to Mitchell Street. Coleman also admitted that he visited a restaurant called Mr. Everything on the

25

day after the crimes, but denied having or using Greer's credit card at the restaurant.[9]  Coleman did not provide additional information about the underlying crimes and did not discuss any prior burglaries or robberies.

During Detective Velasquez's testimony relaying what Coleman told him, Appellant raised a hearsay objection, but the trial court overruled the objection, stating that Coleman's statements fell within the co-conspirator exception to the hearsay rule.  Appellant's trial counsel did not raise a Confrontation Clause objection.

(a) *Hearsay*.

Appellant contends that the trial court abused its discretion when it admitted these statements, over objection, under the co-conspirator exception to the hearsay rule.  We agree that the trial court abused its discretion in admitting the hearsay statements, but conclude that the error was harmless.

OCGA § 24-8-801 (d) (2) (E) provides in pertinent part:

Admissions shall not be excluded by the hearsay

---

[9] Clark testified that Coleman told him he tried to use Greer's credit card at Mr. Everything, but it was declined.

rule. An admission is a statement offered against a party which is . . . [a] statement by a coconspirator of a party during the course and in furtherance of the conspiracy, including a statement made during the concealment phase of a conspiracy. A conspiracy need not be charged in order to make a statement admissible[.]

Before admitting the statements of a co-conspirator,

the State is required to show by a preponderance of the evidence that a conspiracy existed, [and that] the conspiracy included the declarant and the defendant against whom the statement is offered, and the statement was made during the course and in furtherance of the conspiracy.

*Mosley v. State*, 307 Ga. 711, 716 (3) (838 SE2d 289) (2020) (citations and punctuation omitted). Once the conspiracy is established, a statement made by any co-conspirator is admissible hearsay when such statement is made "during the course and in furtherance of the conspiracy, including a statement made during the concealment phase of a conspiracy." OCGA § 24-8-801 (d) (2) (E). However, "hearsay statements that implicate a co-conspirator but do not advance any object of the conspiracy, such as statements that merely spill the beans about the conspiracy, are not admissible[.]" *Allen*, 310 Ga. at 416 (3) (citation and punctuation omitted).

27

Even assuming that a conspiracy existed and that both Appellant and Coleman were part of it, Coleman's statements to Detective Velasquez were not made in furtherance of that conspiracy. Coleman's statements were made during his custodial interview when he discussed his involvement in the burglary of Greer's condominium, including helping to plan the crime at the Mitchell Street house. Coleman also admitted that he was with the group when they traveled to the crime scene, and he confirmed the identities of the other perpetrators who were with him. Thus, the statements Coleman made to Detective Velasquez did not "advance any object of the conspiracy," and were more akin to "spill[ing] the beans about the conspiracy." *Allen*, 310 Ga. at 416 (3) (citation and punctuation omitted). These statements therefore failed to meet the co-conspirator exception to the hearsay rule, and the trial court erred when it admitted these hearsay statements over Appellant's objection.

However, as discussed in Division 2 (b) above, there was other strong evidence of Appellant's guilt. Additionally, Coleman's

28

statements were not especially prejudicial. Coleman placed Appellant with the group at the Sky Lofts Condominiums just before the crimes occurred but did not directly implicate Appellant in any crime; he did not discuss the planning of any robbery, explain what happened inside the condominium complex, or say what happened after the group fled the complex. Thus, the admission of these hearsay statements was harmless, and this enumeration of error fails. See *Anglin v. State*, 302 Ga. 333, 340-341 (6) (806 SE2d 573) (2017) (any error in the admission of hearsay was harmless given the strength of the State's case).

(b) *Confrontation Clause.*

Appellant also contends that trial counsel rendered constitutionally ineffective assistance when he failed to raise a Confrontation Clause objection to this testimony. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U. S. Const. Amend. VI. The Confrontation Clause generally prohibits the admission of out-of-

court testimonial statements made by a declarant who is unavailable for cross-examination. See *Johnson v. State*, 289 Ga. 22, 26 (4) (709 SE2d 217) (2011). "A statement is testimonial if its primary purpose was to establish evidence that could be used in a future prosecution." *Favors v. State*, 296 Ga. 842, 845 (2) (770 SE2d 855) (2015) (citation and punctuation omitted). Whether a statement is "testimonial" applies, "at a minimum[,] . . . to police interrogations." *Crawford v. Washington*, 541 U. S. 36, 68 (124 SCt 1354, 158 LE2d 177) (2004).

Assuming that counsel was deficient for failing to raise a Confrontation Clause objection, the admission of this evidence was harmless for the same reasons that it was harmless to admit the same evidence under the co-conspirator exception to the hearsay rule. Therefore, Appellant cannot show "a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different." *Mitchell*, 307 Ga. at 858 (2). Accordingly, this enumeration of error fails. See *Smith v. State*, 298 Ga. 406, 415 (3) (782 SE2d 269) (2016).

6. Appellant finally contends that his convictions should be reversed based on the cumulative error rule set forth in *State v. Lane*, 308 Ga. 10, 17 (1) (838 SE2d 808) (2020) ("We hold that the proper approach [to assessing multiple trial court evidentiary errors] . . . is to consider collectively the prejudicial effect, if any, of trial court errors, along with the prejudice caused by any deficient performance of counsel."). We disagree.

We assumed without deciding in Division 2 that the trial court erred in admitting evidence of the October 2015 incident. And we determined in Division 5 that the trial court abused its discretion in admitting Detective Velasquez's testimony about his interview with Coleman under the co-conspirator exception to hearsay; we also assumed trial counsel's deficiency with respect to this testimony as a violation of the Confrontation Clause.

However, as explained in those divisions, Appellant has failed to identify sufficient prejudice when these errors by the trial court or trial counsel, either actual or assumed, are considered individually. When considered cumulatively, these errors still do

31

not warrant reversal.  See *Allen*, 310 Ga. at 418 (4); *Hill v. State*, 310 Ga. 180, 192 (850 SE2d 110) (2020).

*Judgment affirmed.  All the Justices concur.*

Decided November 2, 2021 — Reconsideration denied November 17, 2021.

Murder. Fulton Superior Court. Before Judge Millender.

*Brian Steel*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Richard B. Caplan, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kathleen L. McCanless, Assistant Attorney General*, for appellee.