S11A0031. JONES v. THE STATE.

(710 SE2d 127)

HUNSTEIN, Chief Justice.

Appellant Jimmy Lee Jones was convicted of murder and firearms offenses in connection with the shooting death of Latoya Singleton. Finding no error in the denial of Jones's motion for new

trial,[1] we affirm.

1. The evidence adduced at trial authorized the jury to find that Jones and the victim had dated and lived together at various times, and had a child together in July 2006. At the time of the crimes, Jones was living with his mother and the child was living with the victim. In the early morning hours of April 14, 2007, an officer responding to a security alarm call at the victim's home heard a baby crying inside, followed by a gunshot. When backup arrived, officers entered the home and found the victim lying dead in a pool of blood on the kitchen floor with the baby sitting next to her. There was a handgun with no magazine on the kitchen table, later determined to be registered to Jones, and a matching cartridge casing nearby. A cordless phone was lying on the living room floor and the "Caller ID" showed that the last call made had been to Jones's mother. An unoccupied vehicle idling in the driveway of the victim's home was determined to be registered to Jones's mother. The autopsy revealed that the victim died from a single gunshot at contact range that entered the top of her head and traveled downward; the bullet matched the gun and casing found at the scene.

At trial, Jones asserted a defense of accident, testifying that he went to the victim's home around 3:00 a.m. to check on the baby, who had an ear infection. He and the victim decided to go to McDonald's, but Jones remembered that he had left a handgun under the mattress in the victim's bedroom and went to retrieve it. The victim began crying when she saw Jones holding the gun and he reassured her that the gun, which did not have a magazine in it, was not loaded. Testifying that he acted to allay the victim's fears, Jones held her with one arm and pointed the gun downward on her head, believing she would calm down if she heard the gun click harmlessly when he pulled the trigger. The gun fired, however. Jones called his mother from the victim's phone to tell her what had happened before fleeing the scene on foot. He took a truck from his workplace and drove to Florida, where he later turned himself in to police.

Similar transaction evidence was admitted regarding Jones's

---

[1] The crimes occurred on April 14, 2007. Jones was indicted in Richmond County on July 31, 2007 and charged with malice murder, felony murder based on aggravated assault, possession of a firearm during the commission of a crime, cruelty to children in the third degree and use of a firearm by a convicted felon. He was tried before a jury and on May 22, 2008 found guilty of all charges except child cruelty. A hearing was held on June 26, 2008, and in an order entered July 2, 2008 the trial court sentenced Jones to life imprisonment for malice murder plus consecutive terms of five years for firearm possession and fifteen years for firearm use by a convicted felon. The felony murder conviction was vacated by operation of law. *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). Jones's motion for new trial was filed on July 3, 2008 and denied on July 21, 2010; his notice of appeal was timely filed. The appeal was docketed in this Court for the January 2011 term and submitted for decision on the briefs.

conviction for a 1996 aggravated assault. The victim in that instance was Jones's former girlfriend and mother to five of his children. Jones shot a gun at the victim three times as she ran away from him, with one shot hitting under her ear, and he fled the scene.

Jones contends that the evidence in this case did not support the jury's verdict, as it was entirely circumstantial and did not exclude the reasonable hypothesis that he acted without criminal intent. Viewed in the light most favorable to the verdict, however, we conclude that the evidence was sufficient for a rational trier of fact to find Jones guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Jones argues that the trial court erred by giving a "prior difficulties" charge[2] to the jury because it was not adjusted to the evidence and amounted to an improper expression of judicial opinion in violation of OCGA § 17-8-57.

> Because [Jones] was tried after the effective date of the 2007 amendment to OCGA § 17-8-58 and did not specifically object to this charge . . . at the conclusion of the jury charge, he has waived his right to urge error on appeal. Moreover, we find no reversible error, much less any "plain error" pursuant to OCGA § 17-8-58 (b), assuming that analysis under that provision is proper in this case.

(Citations and punctuation omitted.) *Collier v. State*, 288 Ga. 756, 758-759 (4) (707 SE2d 102) (2011). Contrary to Jones's contention, evidence was presented regarding prior difficulties between Jones and the victim. Jones himself testified that the two "had problems" on more than one occasion; that the victim had called police because of those problems "a few times"; and that his mother had helped him move out of the victim's house once before, telling the victim not to let him move back in. Thus, the inclusion of a prior difficulties charge did not constitute an impermissible comment on the evidence. There is also no merit in Jones's argument that the use of the terms "bent of mind" and "course of conduct" in the prior difficulties charge improperly conflated the prior difficulties and similar transaction evidence, as the language of the instruction was consistent with that of the pattern charge. See Suggested Pattern Jury

---

[2] The trial court charged the jury as follows:
Evidence of prior difficulties between the defendant and the alleged victim has been admitted for the sole purpose of illustrating, if it does illustrate, the state of feeling between the defendant and the alleged victim, and the bent of mind and the course of conduct on the part of the defendant.

Instructions, Vol. II: Criminal Cases (4th ed.), § 1.34.20.

3. Jones claims that the trial court erred by failing to give his requested charge on the lesser included offense of involuntary manslaughter because the evidence supported a finding that the victim's death unintentionally resulted from an unlawful act other than a felony, OCGA § 16-5-3 (a), namely, the misdemeanor of reckless conduct. OCGA § 16-5-60 (b).[3] However, Jones's admitted act of purposefully putting a gun to the fearful victim's head and pulling the trigger constitutes the felony offense of aggravated assault, not reckless conduct. See OCGA §§ 16-5-20 (a) (2); 16-5-21 (a) (2), (b) (aggravated assault includes use of a deadly weapon that places another in reasonable apprehension of immediately receiving a violent injury). That Jones claims the gun had no magazine in it, leading him to believe it was unloaded, does not negate any element of aggravated assault. "A firearm pointed at a victim and reasonably appearing to the assault victim to be loaded is a deadly weapon as a matter of law, regardless of whether it is loaded." *State v. Nejad*, 286 Ga. 695, 700 (2) (690 SE2d 846) (2010). Jones's testimony that the victim began crying when she saw the gun provides evidence that she perceived it to be a loaded weapon that could be used to inflict a violent injury, see id., and this perception was certainly reasonable. Compare *Manzano v. State*, 282 Ga. 557 (3) (a) (651 SE2d 661) (2007) (trial court erred by failing to give a requested charge on involuntary manslaughter with reckless conduct as the predicate misdemeanor where defendant testified that both he and the victim believed the gun to be unloaded as they engaged in "horseplay" with the weapon). Moreover, the jury's verdict of guilty on the felony murder charge establishes the existence of all the elements of the underlying felony offense of aggravated assault. *Boyd v. State*, 286 Ga. 166 (4) (686 SE2d 109) (2009). Thus, the trial court did not err in this regard.

4. Finally, Jones takes issue with the jury charges in that they failed to give the jury a clear option of a "not guilty" verdict. However, he did not object on this basis and we find no plain error, if such analysis is proper. See Division 2, supra. The trial court's instructions made multiple references to the jury's ability to acquit the defendant and the jury did so on the cruelty to children count, entering its verdict in that instance as "not guilty."

---

[3] Reckless conduct is defined as follows:

A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

*Judgment affirmed. All the Justices concur, except Nahmias, J., who concurs specially.*

NAHMIAS, Justice, concurring specially.

For the reasons given in my special concurrence in *Collier v. State*, 288 Ga. 756 (707 SE2d 102) (2011), I believe that OCGA § 17-8-58 (b) mandates that appellate courts apply plain error review to enumerated errors regarding jury charges that were not objected to at trial as required by OCGA § 17-8-58 (a). I therefore do not agree that the Court should merely " 'assum[e]' " that plain error review is proper, as the majority does in Divisions 2 and 4, thereby leaving — yet again — the conflict in our case law on this issue unresolved. Accordingly, I do not join those portions of the majority opinion, although I join the remainder of the opinion and the judgment.

DECIDED APRIL 26, 2011.

*Peter D. Johnson,* for appellant.

*Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General,* for appellee.