306 Ga. 277
FINAL COPY

S19A0373.  TAYLOR v. THE STATE.

BENHAM, Justice.

Appellant Davious Letron Taylor appeals his convictions for murder and possession of a weapon during the commission of a crime arising out of the shooting death of Onterio Perez Dorsey.[1]

1.  Appellant contends the evidence was insufficient to convict him.  We disagree.  Viewed in a light most favorable to upholding

---

[1] The crimes occurred on June 20, 2009.  On December 18, 2014, a Clayton County grand jury indicted appellant and Courtney Alexander Banks on charges of malice murder, three counts of felony murder, two counts of aggravated assault, armed robbery, possession of a firearm by a convicted felon, and possession of a weapon during the commission of a crime.  The charges of possession of a firearm by a convicted felon and felony murder predicated thereon were nolle prossed.  Appellant and Banks were jointly tried April 18-21 and April 25-28, 2016, before a jury.  The jury acquitted appellant of armed robbery and one count of felony murder, returning verdicts of guilty on all other charges.  On May 9, 2016, the trial court sentenced appellant to life in prison without parole for malice murder and five consecutive years to serve for possession of a weapon during the commission of a crime.  The remaining charges were either vacated as a matter of law or merged for sentencing purposes.  On May 11, 2016, appellant moved for a new trial and amended that motion on November 6, 2017, and on August 2, 2018.  On August 1, 2018, the trial court held a hearing on the motion, as amended, and denied it August 3, 2018.  Appellant filed a notice of appeal on August 14, 2018. The case was docketed to the term of this Court beginning in December 2018 and has been submitted for a decision to be made on the briefs.

the jury's verdicts, the evidence shows as follows.

*The Events of June 20, 2009*

Kelvin Sheats testified that, on June 20, 2009, he drove Dorsey to an apartment complex so that Dorsey could conduct a drug transaction. Sheats stayed in his vehicle, while Dorsey exited. Sheats testified that Dorsey walked behind one of the apartment buildings and came back with two other African-American men whom Sheats said he had never seen before. Sheats described the two men, who appeared to be in their 20s, as follows. One man was tall and slender, light-skinned, had low-cut hair, and was wearing shorts and a t-shirt. Sheats testified he looked straight at the tall man and saw his whole face during the incident. The other man was shorter and stockier, dark-skinned, had low-cut hair, and was wearing jeans and a white shirt. Sheats stated the three men used a large, green electrical box sitting between two apartment buildings to transact the deal, including setting up a scale. At some point

during the transaction, Sheats heard the tall, light-skinned man tell Dorsey to "give it up." Sheats testified that Dorsey, in response to that command, pulled out the items he had inside his pockets and placed them on the green utility box. Sheats testified the tall, light-skinned man shot Dorsey in the chest with an old revolver in spite of Dorsey's compliance with the tall, light-skinned man's command. At trial, Sheats identified appellant as the person he saw shoot Dorsey, and identified Banks as the shorter and stockier man he saw that day.[2]

Brandon Jones, who lived in an apartment across the street from where the incident occurred and who knew appellant and Banks,[3] testified he was walking by when he saw the car Sheats was driving pull up and saw a man wearing a baseball cap exit the

---

[2] The State also introduced cell phone records, including pictures of text messages, from Dorsey's cell phone and other evidence that linked Banks to the time and place of the shooting.

[3] Jones testified he knew appellant and Banks through "mutual friends," as well as through a person named "Crazy," who lived at the apartment complex where the shooting took place. Jones testified he would see appellant and Banks on occasion at the apartment complex, usually on Crazy's porch.

vehicle. Jones testified that he saw appellant and the man wearing a baseball cap standing at the green electrical box.[4] Jones testified he continued walking to his apartment and, just as he had made it to his porch steps, heard a gunshot. Jones said he looked around and saw appellant with a gun in his hand standing over the man wearing the baseball cap. Jones identified appellant in court as the person who shot the man wearing the baseball cap. Jones also testified that appellant was taller than Banks.

Sheats testified the perpetrators ran behind the apartment buildings after the shooting. Jones testified that he ran away as well.[5] Dorsey, who was wounded, ran back toward Sheats and collapsed. Sheats testified he screamed for help. A woman, who was sitting in her vehicle in the parking lot at the time, testified she heard Sheats' cries for help, went to investigate, and saw Sheats

---

[4] Jones denied seeing Banks at the scene, testifying he only saw appellant and the victim.

[5] Within 48 hours, Jones, who was a teenager living with his mother and younger siblings at the time, left the apartment community where the shooting occurred to go live with a relative so as to avoid any further involvement with the incident.

holding a wounded man in his arms. The woman testified she called 911. The medical examiner testified that Dorsey died from a gunshot wound to the torso.

*The Police Investigations*

There were two police investigations regarding these crimes — one that occurred in 2009 and one that occurred in 2013. Immediately after the shooting in 2009, Sheats could only describe the perpetrators' physical appearance because he did not know them. However, police received some leads by telephone. Audrina Taylor, who knew Dorsey personally through her husband[6] and through one of Dorsey's cousins, testified she called the police a day

---

[6] The State also called Audrina Taylor's husband, Marquez Bell, as a witness, but he testified he did not recall anything. However, the original lead investigator on the case testified that, on or about June 22, 2009, someone identifying himself as "Marq" gave him Banks' phone number. The new lead investigator, who was assigned to the case in 2013, testified that Marquez Bell confirmed he contacted police with Banks' phone number close in time to when the shooting occurred.

or two after the June 20 shooting occurred to tell them that Banks and "Foot," which several trial witnesses testified was appellant's nickname, were involved in the shooting. Audrina Taylor also provided a phone number for Banks.[7] On June 23, which was three days after the shooting occurred, police showed Sheats a six-person photographic lineup, which included appellant's photograph. At that time, Sheats did not identify appellant as a perpetrator; but rather identified another man whose photograph had been randomly placed into the lineup by the computer software program tasked with generating the lineup. Hours after making the identification, Sheats told police he was unsure about his selection.[8] On cross-examination, Jones testified that, although he left the apartment community within days of the shooting,[9] he did talk to police, in the

---

[7] The original lead investigator on the case testified that the phone number Taylor provided was found as a contact in Dorsey's cell phone.

[8] At trial, Sheats conceded he was uncertain about his identification in 2009, and there was evidence that, on June 24, 2009, he told the original lead investigator that he did not believe he could make a positive identification "this year" or possibly "ever" because he had only seen the shooter "from the side."

[9] See note 5, supra.

company of his parents, about a month later because the police left a card at his mother's apartment. Jones testified that he did not give a detailed statement, but that he did tell the detective that "Foot" was involved in the crime. However, by the time police talked to Jones, Sheats had already made his faulty identification. The case went cold for several years until a new lead investigator took over investigating the case on April 4, 2013.

The new lead investigator testified that he reviewed the list of suspects and witnesses identified in 2009 and conducted some interviews.[10] On April 14, 2013, the new investigative team presented three different photographic lineups to Sheats. One lineup contained appellant's picture, a second lineup contained Jones' picture, and a third lineup contained the photograph of another possible suspect in the case. Out of the 18 different pictures he reviewed, Sheats identified appellant as the person who shot

---

[10] The new lead investigator interviewed Sheats, Jones, Audrina Taylor, and Bell.

Dorsey.[11]  On June 24, 2013, the police interviewed Jones again about the June 2009 shooting.[12] Jones, who was more detailed when questioned in 2013, told police he saw appellant shoot Dorsey.[13] Jones testified that after he spoke to police in 2013 about Dorsey's shooting, he ran into appellant on multiple occasions while they were both incarcerated.  Jones testified that on at least one of these occasions, appellant threatened Jones about talking to the authorities.[14]  The new lead investigator testified he took out an

[11] The police showed up at Sheats' house unannounced in 2013.  Sheats testified that he had not had any contact with the police about the case between June 2009 and April 2013.  Sheats also testified that he had seen the shooter's entire face at some point during the incident and that between 2009 and 2013, he had replayed the incident in his head a number of times such that he was more certain about his 2013 identification of appellant.  The new lead investigator testified that Sheats explained that he was too emotional in 2009 to identify the perpetrator.

[12]  In 2013, Jones was convicted, as a first offender, of burglary in the first degree and theft by taking and was imprisoned for the same when investigators interviewed him the second time about Dorsey's killing.  By the time the trial in this case commenced in 2016, Jones was on probation for these same convictions.  Jones did not receive any benefit or promise of a benefit for testifying at appellant's trial.

[13] The record also shows that, in May 2014, Jones identified appellant by photograph.  By that time, the police file had been transferred to the district attorney.

[14] The State also introduced recordings of phone calls appellant made

arrest warrant for appellant on June 26, 2013.

The evidence as summarized above was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the crimes for which he was convicted. See *Jackson v. Virginia,* 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2.  Appellant contends the trial court erred when it admitted extrinsic act evidence pursuant to OCGA § 24-4-404 (b) (Rule 404 (b)).[15]

---

from jail.  Jones authenticated appellant's voice on the recordings.  During one of those phone calls played for the jury, appellant made a comment that Jones was "telling like a motherf***er."

[15] OCGA § 24-4-404 (b) states:
> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

Since the enactment of the new Evidence Code, this Court has been called upon in a number of cases to examine the method by which lower courts are to determine the admissibility of evidence offered under Rule 404 (b) of other acts committed by the accused to prove intent. [Cits.] "A trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion." *State v. Jones*, 297 Ga. 156, 159 (1) (773 SE2d 170) (2015). For other acts evidence to be admissible, the moving party must satisfy a three-pronged test by showing: (1) that the evidence is relevant to an issue other than the defendant's character, (2) that the probative value is not substantially outweighed by [the danger of unfair] prejudice, and (3) that there is sufficient proof from which the jury could find the defendant committed the other act. See *Booth v. State*, 301 Ga. 678, 682 (3) (804 SE2d 104) (2017).

*Manning v. State*, 303 Ga. 723, 734 (2) (814 SE2d 730) (2018). The three-pronged test applies whether the extrinsic acts occurred before or after the charged crimes occurred. See *United States v. Jernigan*, 341 F3d 1273, 1283-1284 (11th Cir. 2003).[16]

The record shows that on December 30, 2015, the State filed notice that it intended to submit evidence of extrinsic acts involving appellant, including a 2011 incident involving aggravated assault

---

[16] See *McKelvin v. State*, 305 Ga. 39, 42 (2) (b) n. 4 (823 SE2d 729) (2019) ("this Court may look for guidance from the Eleventh Circuit in applying these new rules [of evidence]").

and possession of a weapon. Ten days before trial commenced on April 18, 2016, the State supplemented its notice to include a 2008 incident involving drug possession. During a pre-trial hearing, the State asserted it was offering the extrinsic acts to show motive, intent, knowledge, and preparation and plan. Appellant objected on the grounds that the State's notices did not expressly state what the extrinsic acts were being proffered to show (motive, intent, etc.), that the evidence did not support any factors the State was purporting to show, and that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. At the close of the pre-trial hearing, the trial court ruled that the evidence was relevant and not barred by the danger of unfair prejudice, holding it could be admitted at trial for all of the purposes asserted by the State.

As to the 2008 incident, a police officer testified that appellant was arrested at a house where illegal drugs were found. The 2011 incident occurred on July 30. Rondriecko Nash, who was the victim of that incident, testified that he was at a Clayton County hotel that

day with his brother "probably . . . out there selling drugs or something," when he was shot in the stomach because he was talking to a woman who had a boyfriend. Nash testified he could not recall who the shooter was, but a police officer, who investigated the shooting, testified Nash identified appellant as the shooter when presented with a photographic lineup that included appellant's photograph. Appellant pleaded guilty to the 2011 incident and received a five-year sentence (two years in jail and three years on probation). After the State completed its case-in-chief, the trial court granted appellant's motion to strike the evidence concerning the 2008 incident and instructed the jury to disregard it. Because the testimony regarding the 2008 incident was stricken and it is presumed the jury followed the trial court's instruction to disregard it,[17] our review is limited to the 2011 incident.

Assuming without deciding that the admission of the Rule 404

---

[17] See *State v. Johnson*, 280 Ga. 511, 513 (630 SE2d 377) (2006) ("qualified jurors under oath are presumed to follow the instructions given by the trial court").

(b) evidence was erroneous, any error was harmless. "'The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.'" (Citation omitted.) *Smith v. State*, 299 Ga. 424, 432 (2) (d) (788 SE2d 433) (2016). When applying harmless error analysis, we review the evidence de novo and weigh it as a reasonable juror would, rather than reviewing it in a light most favorable to upholding the jury's verdicts of guilty. See *Fletcher v. State*, 303 Ga. 43 (II) (810 SE2d 101) (2018).

The trial record shows the State spent a minimal amount of time eliciting evidence concerning the 2011 incident, presenting just two witnesses who took the stand briefly, and there is no contention that the State mentioned or relied upon the incident during its closing argument to the jury. [18] See, e.g., *Jackson v. State*, 306 Ga. __ (2) (c) (__ SE2d __) (2019) (erroneously admitted Rule 404 (b) evidence was not harmful in part because there was no contention

_____

[18] The closing argument was not transcribed.

the State mentioned it in closing). Compare *Thompson v. State*, 302 Ga. 533 (III) (A) (807 SE2d 899) (2017) (error was not harmless in part because the State emphasized erroneously admitted Rule 404 (b) evidence in closing). Although appellant pleaded guilty to the 2011 incident, the impact of the evidence was diminished by the fact that Nash testified on direct examination that he could not recall if appellant was the person who shot him in the stomach five years earlier. Also, because appellant had already been punished for the 2011 crime by the time his trial for Dorsey's shooting commenced in 2016, it is less likely a reasonable juror would have been inclined to punish him again for that crime, particularly where, as here, the trial court properly instructed jurors about the use of the Rule 404 (b) evidence.[19]

While Sheats failed to identify appellant as the shooter in 2009, Jones and Audrina Taylor reported to police close in time to Dorsey's

---

[19] See Division 3 (c), infra.

shooting that a person nicknamed "Foot" was involved.[20] Although the defense impeached Jones with convictions he incurred after 2009, his identification of appellant as being involved in Dorsey's killing in 2009 during an interview in which he was a teenage boy accompanied by his parents, was consistent with his 2013 identification when police interviewed him as an adult inmate in the Clayton County jail. In addition, there was evidence that appellant was upset by Jones' talking to police about the 2011 shooting and threatened Jones while they crossed each other's paths in jail. Such conduct was indicative of appellant's consciousness of guilt for Dorsey's killing. See *Cunningham v. State*, 304 Ga. 789 (2) (822 SE2d 281) (2018) (admission of Rule 404 (b) evidence was harmless error in part because the record showed the defendant attempted to have a key witness killed prior to trial).

Sheats was questioned at length on direct and on cross-examination about his initial failure to identify appellant as the

---

[20] The fact that appellant went by the nickname "Foot" was never disputed.

perpetrator in 2009. He testified, and explained to police at the time, that he was too emotional to make an identification three days after watching his friend get shot to death. He testified that by the time he looked at 18 photographs and identified appellant as the shooter in 2013, he had gained more clarity because the events had played out in his mind several times. In addition, the original lead investigator confirmed that the police did not place any bulletins describing appellant or any other suspect in the public domain that could possibly influence a later photographic lineup. There was no evidence that Sheats had been improperly influenced[21] when he identified appellant in 2013 as the person who shot Dorsey.

Under the circumstances of this case, it is highly probable that the admission of the evidence concerning the 2011 incident did not contribute to the jury's verdicts.

3. Appellant alleges the trial court erred when it failed to give

---

[21] The original lead investigator testified that neither a description of appellant nor a general description of the alleged shooter was ever released to the public as a BOLO (be on the lookout) bulletin. There was some evidence that Dorsey's family created and circulated their own flyer; however, the defense did not obtain any testimony from the family about the flyer's creation, and there was no evidence that Sheats ever saw it.

a charge on accomplice testimony, when it failed to charge on the statute of limitation, and when it allegedly improperly charged on the use of Rule 404 (b) evidence. Because appellant did not request charges on accomplice testimony or on the statute of limitation, and because he did not object to the charges given on the use of Rule 404 (b) evidence, he is only entitled to plain error review. See *Clark v. State*, 299 Ga. 552 (2) (787 SE2d 212) (2016).

> In order to establish reversible error under the plain error standard of review for jury instructions, the instruction must not only be erroneous; the error must be obvious; the error must not have been affirmatively waived; and the appellant must make an affirmative showing that the instruction likely affected the outcome of the proceedings. See *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011); see also *Shaw v. State*, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013). Only if the appellant has met the burden of proof with respect to these three prongs of the plain error test, the appellate court may, in its discretion, remedy the error if it seriously affects the fairness, integrity or public reputation of the judicial proceedings. [Cit.]

*Willis v. State*, 304 Ga. 122, 129 (2) (c) (816 SE2d 656) (2018).

(a) Appellant contends that Sheats was an accomplice inasmuch as he admittedly drove the victim to the crime scene in order to engage in a drug transaction and, therefore argues he was

entitled to a charge on accomplice testimony. Appellant's contentions are without merit. Whether a person is a party to the crime may be determined from his actions before, during, and after the commission of a criminal act. See *Williams v. State*, 304 Ga. 658 (1) (821 SE2d 351) (2018). Here Sheats drove Dorsey to the scene and stayed in the car while the drug transaction commenced. Sheats did not know appellant or Banks. Rather than fleeing the scene with appellant and Banks after appellant shot Dorsey, Sheats stayed with Dorsey and reported the shooting to police. Sheats immediately disclosed the fact that he and Dorsey were at the apartment complex for a drug transaction. Sheats' conduct before, during, and after the incident did not indicate an intent to aid or abet appellant in any of the crimes charged.[22] Accordingly, a charge on accomplice testimony was unwarranted in this case.

(b) Although the crimes took place in 2009, appellant was not indicted until 2014. As to the crimes that did not constitute murder,

---

[22] The charged crimes included malice murder, felony murder, aggravated assault, armed robbery, possession of a firearm by a convicted felon, and possession of a weapon during the commission of a crime.

the State alleged in the indictment that the statute of limitation was tolled because appellant's identity was not known until April 14, 2013.  See OCGA § 17-3-2 (2).  Appellant never asserted a statute of limitation defense at trial and never challenged the State's assertion that the statute of limitation had been tolled.  Now on appeal, appellant challenges the validity of his conviction for possession of a weapon during the commission of a crime by asserting that the trial court committed plain error when it failed to give a charge on the statute of limitation sua sponte.   We disagree.

"In criminal cases, the statute of limitation runs . . . from the time of the criminal act to the time of indictment."  *Hall v. Hopper*, 234 Ga. 625, 626 (1) (216 SE2d 839) (1975).  "[W]here an exception is relied upon to prevent the bar of the statute of limitation[ ], it must be alleged and proved."  *Hollingsworth v. State*, 7 Ga. App. 16, 16 (65 SE 1077) (1909).  Indeed, the State bears the burden at trial "to prove that a crime occurred within the statute of limitation, or, if an exception to the statute is alleged, to prove that the case properly falls within the exception."  (Citation and punctuation

omitted.) *Jenkins v. State*, 278 Ga. 598, 604 (1) (B) n. 31 (604 SE2d 789) (2004). Where a claim of instructional error is made, we examine the jury charge as a whole, see *Woodard v. State*, 296 Ga. 803 (771 SE2d 362) (2015).

As to possession of a weapon during the commission of a crime, the indictment, which was read to the jury and sent out with the jury during its deliberations, alleged in pertinent part that appellant's "identity was unknown to law enforcement until April 14, 2013." This Court has held that an exception to the statute of limitation is a "material allegation" which must be alleged in the indictment. See *McLane v. State*, 4 Ga. 335, 342 (1848). While the trial court did not give a specific charge on the statute of limitation sua sponte, it did, at the close of all evidence in the case, instruct the jury that the State had the burden to "prove every material allegation of the indictment . . . beyond a reasonable doubt." We presume that the jury follows the trial court's instructions. See *Allen v. State*, 277 Ga. 502 (3) (c) (591 SE2d 784) (2004). Appellant cites no precedent requiring a more detailed instruction on the

statute of limitation or the applicable tolling exceptions. See *State v. Herrera-Bustamante*, 304 Ga. 259, 264 (2) (b) (818 SE2d 552) (2018) (recognizing that "[a]n error cannot be plain where there is no controlling authority on point") (citation and punctuation omitted). Accordingly, we cannot say that the trial court's failure to specifically instruct the jury on the relevant statute of limitation or tolling amounts to clear and obvious error. See *Jackson v. State*, 306 Ga. 266, 270 (2) (__ SE2d __) (2019).

(c) The trial court instructed the jury as to the use of Rule 404 (b) evidence immediately prior to the testimony of the Rule 404 (b) witnesses and instructed the jury once again after the close of evidence. Appellant contends the trial court erred when it included the following language in its charge to the jury: "The evidence may be considered only to the extent that it may show the issues that the State is required or authorized to prove in the crimes charged in this case now on trial." The language in question was and is consistent

with Georgia's pattern jury instructions,[23] and appellant has not otherwise shown that there was plain error. See *Dyal v. State*, 297 Ga. 184 (5) (773 SE2d 249) (2015); *Jones v. State*, 289 Ga. 145 (2) (710 SE2d 127) (2011).

4. Appellant contends the trial court erred when it granted the State's motion in limine to exclude self-serving statements made by appellant to police. Appellant did not object to the State's motion at the time it was granted. However, since appellant has failed to identify what statements he contends should have been admitted, this Court cannot meaningfully review this allegation of plain error. See *McKoy v. State*, 303 Ga. 327 (2) (812 SE2d 293) (2018). See also *Henderson v. State*, 304 Ga. 733 (4) (822 SE2d 228) (2018).

5. Finally, appellant contends trial counsel rendered constitutionally ineffective assistance when she failed to object to the State's motion in limine regarding self-serving statements; when she failed to request a charge on accomplice testimony; when she

---

[23] See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 1.34.10.

failed to object to the charge given on Rule 404 (b) evidence; when she failed to demur to charges in the indictment that were barred by the statute of limitation; and when she did not request a jury charge on the statute of limitation. In order to prevail on a claim of ineffective assistance of counsel, appellant must

> prove both that his counsel's performance was professionally deficient and that, but for the unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). We need not review both elements of this test if the appellant fails to prove one of them. See *Matthews v. State*, 301 Ga. 286, 288 (800 SE2d 533) (2017).

*Stripling v. State*, 304 Ga. 131, 138 (3) (b) (816 SE2d 663) (2018).

(a) Generally, trial counsel will not be deemed deficient in circumstances where the objections in question would have lacked merit. In this case, appellant has failed to show that the trial court erred when it instructed the jury on the Rule 404 (b) evidence, and, therefore, trial counsel was not deficient for failing to object. See *Richardson v. State*, 304 Ga. 900 (2) (c) (823 SE2d 321) (2019). Similarly, counsel was not deficient for failing to request a charge

on accomplice testimony, which was not warranted by the evidence related to the charged crimes. See *Columbus v. State*, 270 Ga. 658 (2) (d) (513 SE2d 498) (1999). As to the trial court's grant of the motion in limine to prohibit the admission of appellant's self-serving statements, we cannot meaningfully review any alleged error, including an alleged error of ineffective assistance. See Division 4, supra.

(b) Appellant has posited two ineffective assistance claims regarding the statute of limitation concerning charges in the indictment that do not constitute murder. The only such crime for which appellant has been convicted is the possession of a weapon during the commission of a crime. Appellant contends that counsel was ineffective when she failed to file a pre-trial demurrer challenging the statute of limitation and when she failed to request a charge on the statute of limitation. We disagree.

(i) In this case, a pre-trial demurrer to the indictment on statute of limitation grounds would have been denied because the indictment was not defective on its face inasmuch as it included

language that the statute of limitation had been tolled. See *State v. Barker*, 277 Ga. App. 84 (3) (625 SE2d 500) (2005). Compare *Lynch v. State*, 346 Ga. App. 849 (3) (a) (i) (815 SE2d 340) (2018) (indictment fatally defective when it did not include tolling language as to certain charges that had expired under the respective statute of limitation).

(ii) Since the State alleged that the statute of limitation was tolled as to the non-murder offenses, that allegation was material for purposes of the State's burden of proof as to those crimes. See *McLane v. State*, 4 Ga. at 342. As we explained in Division 3 (b), supra, the jury was properly instructed on the State's burden to prove every material allegation in the indictment, and so trial counsel was not deficient for failing to request a more specific instruction thereon.

*Judgment affirmed. All the Justices concur, except Blackwell, J., who concurs in judgment only in Divisions 3 (b) and 5 (b) (ii).*

Decided June 24, 2019.

Murder. Clayton Superior Court. Before Judge Simmons, Senior Judge.

*John W. Kraus*, for appellant.

*Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General*, for appellee.