NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 21, 2023

S23A0636. RANDOLPH v. THE STATE.

MCMILLIAN, Justice.

In March 2016, a jury found James Lorenzo Randolph guilty of malice murder, armed robbery, and other crimes in connection with the armed robbery of Carlos Torres and Dennis Dixon and the shooting death of Rodney Castlin.[1] On appeal, Randolph asserts that

---

[1] Castlin was killed on December 7, 2000. In December 2014, a Cobb County grand jury indicted Randolph on charges of malice murder (Count 1), felony murder (Count 2), criminal attempt to commit armed robbery against Castlin (Count 3), two counts of armed robbery against Torres and Dixon, respectively (Counts 4 and 6), aggravated assault of Torres (Count 5), and possession of a firearm during the commission of a felony (Count 7). At a trial in March 2016, a jury found Randolph guilty of all counts. The trial court sentenced Randolph to serve three consecutive life sentences in prison on Counts 1, 4, and 6. In addition, the trial court sentenced Randolph to serve ten years in prison on Count 3, twenty years on Count 5, and five years on Count 7, with each sentence to be served consecutively for a total of three life sentences plus thirty-five years in confinement. Count 2 was vacated by operation of law. Randolph timely filed a motion for new trial, which he later amended through new counsel on October 14, 2022. Following a hearing, the trial court denied the motion for new trial on December 27, 2022. Randolph timely appealed, and the case was docketed to the April 2023 term of this Court and submitted for a decision on the briefs.

the evidence was insufficient to support his convictions because the State failed to corroborate the testimony of an accomplice and that the trial court erred in admitting evidence of two other acts under OCGA § 24-4-404 (b). Because we conclude that the accomplice's testimony was sufficiently corroborated by other evidence admitted at trial, that the trial court did not err in admitting one prior incident of armed robbery, and that any error in admitting the other incident (a home burglary) was harmless, we affirm.

The evidence introduced at trial shows that on December 7, 2000, Torres was working as a front desk clerk at a Wingate Inn in Kennesaw. Around 10:00 p.m., a man jumped over the front counter, pointed a gun at Torres, and said, "Give me the money." Fearing that he would be shot, Torres held the hotel's cash drawer out, and the man took the money from it. Castlin, who was working as the night manager and had been in the back office, came around the corner to see what was going on. The man asked Castlin if there was a safe, and Castlin told him there was not. The man, however, continued to point the gun at Castlin and repeatedly asked where the safe was.

2

The man then hit Torres in the head with the butt of the gun, causing him to fall to the ground and lose consciousness. When Torres awoke, he heard a gunshot and stood up in time to see someone jump over the counter and run out. Castlin was lying on the ground, bleeding from his chest. Torres later described the man as slim, about five feet and eleven inches or six feet tall, and wielding a black revolver. Torres was able to give a description of the shooter to a sketch artist, and the drawing was admitted at trial. Later at trial, a photograph showing what Randolph looked like in 2000 was also admitted.

Dixon was a guest at the hotel that evening and was in the computer room of the lobby when he heard "a bunch of ruckus." Dixon looked out to see two men dressed in black and wearing masks come through the front door. One of the men put his hands down on the front desk and jumped over it, while the other came into the computer room and ordered Dixon to get on the floor and to empty his pockets. Dixon did not see a weapon, but the man had his hand in his pocket like he was pointing something at Dixon. Fearing that

he could be shot, Dixon gave his money to the man. During this time, Dixon heard the other man say numerous times, "[O]pen the safe or I'm going to shoot you." He then heard a gunshot and closed his eyes. After he heard the men run out of the hotel, Dixon hid for a time and then fled down the hall to the room of his traveling companion and called 911.

LeeAnn Bennett, a supervising emergency room nurse, was also a guest at the hotel that night. When she heard someone yelling that someone had been shot, she ran out of her room and found Castlin lying on the floor behind the front desk with an apparent chest wound. His eyes were open, but he was not breathing regularly. She administered aid until EMTs arrived. Castlin was pronounced dead on arrival at a nearby hospital. A medical examiner concluded that Castlin's cause of death was a gunshot wound to the chest.

A crime scene investigator with the Cobb County Police Department collected a .22-caliber bullet from the scene and lifted fingerprints from the front counter, which were entered into a data

base that only included fingerprints from Georgia, and no fingerprint match was identified. The Cobb County Police Department continued to periodically run searches of the fingerprints over the years, and eventually, in July 2012, a search of the federal fingerprint database maintained by the FBI yielded a list of possible matches that included Randolph's name. Following a manual comparison, a Cobb County Police Department fingerprint analyst determined that Randolph's fingerprints matched the set of prints lifted from the hotel in 2000. The match was later confirmed by a retired GBI fingerprint expert.[2]

Cobb County Investigator John Dawes testified that in June 2012, he spoke with a detective in Jacksonville, Florida, concerning information that the detective had obtained that he believed might be relevant to an old Cobb County case. The detective explained that

---

[2] At trial, Randolph's counsel argued that Randolph could have left the fingerprints at some time prior to the shooting. However, the general manager for the Wingate Inn, which had just opened two weeks prior to the shooting, testified that Randolph was not an employee of the hotel, nor had he been a guest at the hotel. She also explained that the surfaces of the lobby, including the front desk counter, were cleaned several times each shift.

counsel for Ruel Brown, who was facing unrelated charges in Florida, had represented to him that Brown had information about a shooting that occurred in November or December 2000 at a hotel north of Atlanta with the word "Win" in the name. Dawes determined that Brown was likely referring to the unsolved shooting at the Wingate Inn in Kennesaw. Dawes eventually obtained a statement from Brown in September 2014, in which Brown identified Randolph as the shooter. Following his arrest in South Carolina for the murder of Castlin, Randolph called the mother of his child while detained in jail there and told her that "they got" him "for something fourteen years ago" and that his "life [was] changed now." A recording of this phone call was played for the jury.

Following a grant of immunity, Brown testified on behalf of the State at trial.[3] Brown explained that he had known Randolph since Randolph was 13 or 14 years old. In 2000, Brown lived in Columbia, South Carolina, but traveled back and forth to Atlanta as part of a

---

[3] At the time of trial, Brown was serving a 15-year federal prison sentence on sex trafficking charges.

sex trafficking ring he was involved in. In December 2000, Randolph, who was about six feet tall with a slender build at the time,[4] and another man, whom Brown refused to identify, wanted to come with Brown to Atlanta, and Brown agreed. Around 10:00 p.m. on December 7, 2000, the three men went to Cobb County for the purpose of robbing the Wingate Inn. Randolph, carrying Brown's small-caliber handgun, and the third man went inside while Brown waited outside in the car, parked in a position where he could see into the lobby. Brown saw Randolph behind the counter with the gun pointed at a man who had his hands up. Brown saw the flash of the gun being fired and the man fall backward. Randolph and the third man, who had been out of view, ran out of the hotel and into Brown's car, and Brown immediately drove off toward the interstate.

Brown testified that he was really upset and "was kind of giving it to" Randolph because the shooting was not part of the plan. Randolph claimed that he had to shoot because the victim had been coming toward him. The three of them divided up the money that

_____

[4] Brown testified that he weighed about 300 pounds in 2000.

they had stolen from the cash register and from Dixon. Brown initially wanted to drive straight to South Carolina, but decided that they should stay somewhere nearby so they could find out if the victim had died. Brown dropped the gun in a storm drain, and then the three men slept in the car while they waited for the morning newspaper to be delivered. The following morning, after reading that the victim had died, they returned to Columbia, South Carolina.

The State also presented evidence of two prior offenses committed by Randolph. Jagdish Patel testified that on December 4, 2000, three days before the shooting at the Wingate Inn, he was working at a Blimpie restaurant in Columbia, South Carolina when a man came in around 9:00 or 10:00 p.m. with a gun and said, "Give me the money. Otherwise I'll shoot you." The man then climbed over the counter and told Patel to lie down on the floor and asked where the safe was. When Patel told him there was no safe, the man demanded his wallet. The man then took the money from Patel's wallet and the money in the cash register and ran out the back door. Patel described the man as young, thin, and less than six feet tall. A

fingerprint located on the cash register was found to match Randolph's, and Randolph pleaded guilty to armed robbery in connection with that incident and served a ten-year sentence.

Edward McIntosh testified that on April 29, 2011, someone kicked in the door to his home in Columbia and stole several televisions, his wife's jewelry, and a laptop. Fingerprints recovered from inside the home matched Randolph's, and the Richland County Sheriff's Department took out an arrest warrant for Randolph, which was still outstanding at the time of trial.

1. Randolph contends that the evidence was insufficient to support his convictions because the State's evidence was based in whole upon the testimony of Brown, an unindicted co-conspirator, and the testimony was not sufficiently corroborated under OCGA § 24-14-8. We are not persuaded.

Although "[t]he testimony of a single witness is generally sufficient to establish a fact," Georgia statutory law provides that, in "felony cases where the only witness is an accomplice," the witness's testimony alone is not sufficient. OCGA § 24-14-8. "Thus,

9

when the only witness is an accomplice, corroborating evidence is required to support a guilty verdict," *Barber v. State*, 314 Ga. 759, 763 (1) (879 SE2d 428) (2022) (citation and punctuation omitted), and the jury was so instructed. However, "only slight evidence of corroboration is required," and, as long as the corroborating evidence "directly connects the defendant to the crime or leads to the inference of guilt," the corroboration may consist entirely of circumstantial evidence." Id. (citation and punctuation omitted).

Here, the State showed that the physical description of the assailant with the gun who came into the hotel matched Randolph, whose fingerprint was found on the front-desk counter at the hotel, which had just opened two weeks prior and at which Randolph had been neither a guest nor an employee. The jury was also able to independently compare an artist's sketch rendered based on Torres's description with a photograph of Randolph taken in 2000. And while in jail in 2014, Randolph made incriminating statements that were played for the jury. This evidence was more than sufficient to corroborate Brown's testimony as a matter of Georgia statutory

10

law.[5] See *Poole v. State*, 312 Ga. 515, 522 (863 SE2d 93) (2021) (accomplice testimony sufficiently corroborated by physical evidence collected at the scene, along with other evidence); *Johnson v. State*, 288 Ga. 803, 805-806 (2) (708 SE2d 331) (2011) (jury was authorized to find that a witness's physical description of the shooter matched that of the defendant and that the accomplice's testimony was therefore sufficiently corroborated). Accordingly, this enumeration of error fails.

2. Randolph also asserts that the trial court erred in admitting evidence of the 2000 armed robbery and the 2011 home burglary as other-acts evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)"). To be admissible under Rule 404 (b), other-acts evidence must satisfy a three-part test:

> (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by the danger of unfair prejudice as required by OCGA § 24-4-403 ("Rule 403"), and (3) there is sufficient proof for a jury to find by a

---

[5] Randolph does not assert that the evidence was insufficient as a matter of constitutional due process, so we do not address that issue. See *Davenport v. State*, 309 Ga. 385, 392 (4) (846 SE2d 83) (2020) (holding that we no longer routinely review the sufficiency of the evidence in non-death penalty cases).

preponderance of the evidence that the defendant committed the prior act.

*Lowe v. State*, 314 Ga. 788, 792 (2) (a) (879 SE2d 492) (2022) (citation and punctuation omitted). "We review the trial court's decision to admit evidence pursuant to Rule 404 (b) for a clear abuse of discretion." *Hood v. State*, 309 Ga. 493, 499 (2) (847 SE2d 172) (2020).

Here, following a pretrial hearing, the trial court entered an order admitting evidence of both the 2000 armed robbery and the 2011 home burglary under Rule 404 (b) for the purposes of proving intent, motive, plan, or modus operandi.[6] In considering the issue again at the motion for new trial stage, the trial court determined that the 2000 armed robbery was relevant to show Randolph's intent because he pleaded not guilty in this case and maintained his innocence throughout trial and that it was also relevant to show plan and modus operandi because of the similarities between the

---

[6] Although Randolph argues that the trial court improperly admitted the evidence to show identity, there is no indication in the record that the State sought to introduce the evidence for this purpose or that the trial court included identity as one of the limited purposes for admission of the evidence.

two robberies. Although the State conceded at the motion for new trial hearing that the 2011 home burglary evidence should not have been admitted, the trial court found that its admission was harmless in light of the overwhelming evidence against Randolph and because the error caused minimal prejudice, especially in light of the properly admitted 2000 armed robbery.

(a) Randolph argues that evidence of the 2000 armed robbery was inadmissible under both the relevance and probative-value-versus-unfair-prejudice prongs of the Rule 404 (b) test.[7] According to Randolph, the 2000 armed robbery was not relevant to show intent because it was not committed with the same state of mind as the charged murder in this case. This argument fails. Because Randolph entered a plea of not guilty to the armed robbery charges and did not otherwise take affirmative steps to remove intent as an issue, he made intent "a material issue" in this case. *Hood*, 309 Ga. at 499-500 (2) (citation and punctuation omitted). Under such

---

[7] Randolph does not challenge the third prong with respect to his 2000 armed robbery conviction.

13

circumstances, "the State may prove intent by qualifying Rule 404 (b) evidence." *Naples v. State*, 308 Ga. 43, 51 (2) (e) (838 SE2d 780) (2020) (citation and punctuation omitted). Thus, the trial court did not abuse its discretion by ruling that the 2000 armed robbery was relevant to show that Randolph committed the armed robbery in this case with the same intent. See *Olds v. State*, 299 Ga. 65, 72 (2) (786 SE2d 633 (2016) ("[E]vidence that an accused committed an intentional act generally is relevant to show . . . that the same defendant committed a similar act with the same sort of intent[.]"). See also *Booth v. State*, 301 Ga. 678, 683 (3) (804 SE2d 104) (2017) ("[W]e may consider whether the other acts were relevant to the issue of intent on any of [the charged] offenses.").

And "in evaluating the probative value of other-acts evidence offered to prove intent, we consider the overall similarity between the other acts and the charged crimes, the other act's temporal remoteness, and the prosecutorial need for the evidence." *Thomas v. State*, 314 Ga. 681, 684 (1) (a) (878 SE2d 493) (2022). Randolph focuses on the alleged dissimilarities between the 2000 armed

robbery and the armed robbery in this case to argue that the probative value of the other-acts evidence was substantially outweighed by its unfair prejudice. However, in both incidents Randolph robbed a business at night by vaulting over the counter to confront the employee with a small handgun and asking about a safe. And the two events occurred only three days apart. These similarities and temporal proximity between the two robberies demonstrate that the probative value of the 2000 armed robbery evidence to prove Randolph's intent to commit the armed robbery in this case was significant. See, e.g., *Hood*, 309 Ga. at 501 (2) (evidence of other robbery was probative of defendant's intent to participate in charged crimes of felony murder predicated on armed robbery, aggravated assault, and related crimes because of, inter alia, similarities between the incidents, which occurred less than four months apart from one another); *Fleming v. State,* 306 Ga. 240, 248 (3) (b) (830 SE2d 129) (2019) (the other-acts evidence had a high probative value because, inter alia, the other act had significant similarities and occurred within less than one year of the charged

15

crimes).

Although the evidence of the 2000 armed robbery was certainly prejudicial to Randolph, its prejudicial value was fairly low, given that no one was physically harmed in the course of the robbery, and moreover, Rule 403 requires the balancing of the probative value of the evidence against the danger of *unfair* prejudice. "Rule 403's exclusionary force is meant to be applied sparingly – primarily when the other-acts evidence has scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Hounkpatin v. State*, 313 Ga. 789, 796 (2) (a) (873 SE2d 201) (2022) (citation and punctuation omitted). Given the probative value of the other-acts evidence here weighed against the relatively low danger of unfair prejudice, the trial court did not abuse its discretion in admitting evidence of the 2000 armed robbery. See id. Having determined that the evidence was admissible as to intent, we need not examine whether it was also admissible as to motive, plan, or modus operandi. See *Bradshaw v. State*, 296 Ga. 650, 657 (3) n.5

(769 SE2d 892) (2015).[8]

(b) On appeal, the State concedes that the 2011 home burglary should not have been admitted under Rule 404 (b). Assuming without deciding that the trial court abused its discretion in admitting evidence of the 2011 home burglary, this evidentiary error warrants reversal only if it was harmful. See *Morrell v. State*, 313 Ga. 247, 261 (2) (c) (869 SE2d 447) (2022) ("It is fundamental that harm as well as error must be shown for reversal."). "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Thomas*, 314 Ga. at 686 (1) (c) (citation omitted). In making this determination, "we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." Id. (citation omitted).

---

[8] We note also that Randolph has not challenged the trial court's instruction regarding the purposes for which the other-acts evidence could be considered.

17

Here, several witnesses gave relatively brief testimony about the incident that was not especially prejudicial, given that, again, no one was physically harmed in the course of the burglary,[9] and the State made no mention of it during closing argument.[10] See *Stafford v. State*, 312 Ga. 811, 817 (2) (b) (865 SE2d 116) (2021) (any error in admission of Rule 404 (b) evidence was harmless in part because the State did not mention or rely on the evidence in closing argument); *Taylor v. State*, 306 Ga. 277, 283 (2) (830 SE2d 90) (2019) (any error in admitting Rule 404 (b) evidence was harmless where the State spent a minimal amount of time eliciting evidence concerning the incident and made no mention of it during its closing argument). In addition, the other evidence in this case – including Brown's testimony that Randolph was the shooter, the presence of

---

[9] The homeowner did not identify Randolph, but testified that he had not given him permission to enter his home. Two witnesses testified as to their collection and analysis of the fingerprints found in the home that matched Randolph's. A final witness briefly testified regarding the warrant for Randolph's arrest, which remained open.

[10] Although Randolph argues that the jury was told that he had not been arrested or punished in connection with the burglary, the jury was also told that the arrest warrant was still active, meaning that he could still face punishment in South Carolina.

18

Randolph's fingerprint at the scene, and the properly admitted 2000 armed robbery evidence – was strong. See *Priester v. State*, 316 Ga. 133, 137 (2) (886 SE2d 805) (2023) (erroneously admitted Rule 404 (b) evidence not harmful where the properly admitted evidence against the defendant was strong).

The record also shows that the trial court twice instructed the jury that it could only consider the other-acts evidence for the limited Rule 404 (b) purposes; that it could not conclude from the evidence that Randolph had a propensity to commit crimes; and that Randolph was on trial only for the charges listed in the indictment. Thus, Randolph cannot show that it is highly probable that any error in admitting the 2011 home burglary evidence contributed to the jury's verdict, and this enumeration of error fails. See *Pritchett v. State*, 314 Ga. 767, 780 (2) (c) (879 SE2d 436) (2022) (concluding erroneous admission of other-acts evidence was harmless in part because, in considering whether the admission of other-acts evidence was harmless, "we presume that the jury followed [the trial court's] instructions and did not use the other-acts evidence

improperly to support that [Appellant] had a propensity towards violence").

*Judgment affirmed. All the Justices concur.*